THE PEOPLE ex rel. Mrs. D. Fitzgerald, Appellee, vs. CAR-
TER H. HARRISON, Mayor, Appellant.

*Opinion filed October 26, 1912—Rehearing denied Dec. 5, 1912.*

1. DRAM-SHOPS—*there is no inherent right to carry on business
of selling intoxicating liquor.* There is no inherent right to carry
on the business of selling intoxicating liquor, and the State may
regulate the business or entirely prohibit it.

2. SAME—*in Illinois the power of cities over dram-shops is co-
extensive with that of the State.* In Illinois the power conferred
upon cities to regulate or prohibit the sale of intoxicating liquor
is co-extensive with that of the State, and includes authority to
adopt any reasonable means to reduce the evils of the business,
which do not violate constitutional rights.

3. SAME—*power to license, regulate and prohibit must be ex-
ercised by ordinance.* The power to license, regulate and prohibit
the sale of intoxicating liquor can be exercised only by an ordi-
nance, and such ordinance must be a general one, specifying the
manner and conditions of the issue of the license and the power
conferred by it, and must be uniform in its operation upon per-
sons within its scope.

4. SAME—*legislature cannot authorize cities to make an unrea-
sonable discrimination.* The legislature cannot confer upon cities
a power it does not possess, and cannot, therefore, authorize a dis-
crimination between individuals not founded on a reasonable dif-
ference in conditions.

5. SAME—*city has power to limit number of saloons within its
boundaries.* A city has power to limit the number of saloons with-
in its boundaries, and the fact that such limitation prevents some
persons from keeping saloons who might do so if no limitation
existed is merely an incidental effect, which does not impair their
constitutional rights.

6. SAME—*effect where ordinance limits the number of saloon
licenses.* Where an ordinance limits the number of saloon licenses
which may be issued in a city everybody has an equal right to ap-
ply for such a license, and if there are more applicants than there
are licenses to be issued, the mayor has a reasonable discretion to
determine the licensees.

7. SAME—*statute limits life of a dram-shop license to the mu-
nicipal year.* In conferring upon cities and villages the power to
license and prohibit the sale of intoxicating liquor the legislature

prohibited the issuance of a license to extend beyond the municipal year in which it is granted, and no discretion is vested in such cities or villages in that regard.

8. SAME—*a license from year to year is the same as a perpetual license.* The right to a renewal of a dram-shop license from year to year, upon compliance with the ordinances of the city, is not different, in substance, from the right to a perpetual license, subject to the ordinances of the city.

9. SAME—*when renewal provision of a dram-shop ordinance is invalid.* A provision in an ordinance giving to the holder of a dram-shop license an absolute right to a renewal upon compliance with the city ordinances, and giving the same right to an assignee of the holder or his legal representatives, and authorizing successive assignments, is contrary to the statute limiting the life of a license to the municipal year in which the license was granted, and is invalid.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, (CRAWFORD ROSS, of counsel,) for appellant.

O'DONNELL & O'DONNELL, for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The circuit court of Cook county awarded a peremptory writ of *mandamus* against the mayor of Chicago, commanding him to issue a license to keep a dram-shop, and he has appealed.

Various arguments are presented in support of the appellant's assignments of error, but his substantial defense on the merits rests upon the provisions of sections 2 and 3 of an ordinance which is set out in full in the petition. The circuit court granted an appeal to this court on the ground that, the validity of section 3 of the ordinance being involved, the public interest so required. The appellee

insists that the provisions of sections 2 and 3 relied upon by the appellant are unconstitutional. Those sections are as follows:

"Sec. 2. All lawful licenses issued and in force on the thirty-first day of July, 1906, for the keeping of a saloon or dram-shop within the city of Chicago, shall be renewed or re-issued upon strict and full compliance with the laws and ordinances in force in the city of Chicago at the time of the application for such renewal or re-issue, but no license (other than a renewal or re-issue, as hereinafter provided,) for the keeping of a saloon or dram-shop shall at any time thereafter be granted or issue until the number of licenses in force at the time shall be less than one for every five hundred of the population of the city of Chicago, as ascertained by the then last preceding school census, whereupon such new licenses may be issued from time to time to lawful applicants, according to priority of application, upon full compliance by the applicant with the laws and ordinances in force in the city of Chicago at the time of the application for such license, until the total number of licenses in force shall equal one for every five hundred of the population of the city of Chicago, as ascertained by the then last preceding school census.

"Sec. 3. The owner or owners, or his or their legal representatives, of a license to keep a dram-shop or a saloon shall have and be given the right to a renewal or re-issue of such license, at the same or different place of business, upon compliance with the ordinances now in force in the city of Chicago or which may hereafter be passed governing the licensing of dram-shops or of saloons; and such owner or owners, or his or their legal representatives, of a dram-shop or saloon license may assign or convey his right to the renewal or re-issue thereof to another person, who, upon full compliance with the ordinances then in force in the city of Chicago governing the licensing of saloons or dram-shops, shall be entitled to a renewal or re-

issue of such license in his own name, and each holder of
a license, or his legal representatives, in turn may assign
or. convey such right of renewal or re-issue of such license
upon the same terms and conditions as the original owner
thereof could do hereunder. The privilege of renewal or
re-issue provided by this ordinance shall apply only so long
as the license in each case shall have been kept in force
continuously and uninterruptedly in the name of the licensee
or his successor in interest. No license to keep a saloon or
dram-shop shall be hereafter issued to a firm except in the
names of the individual members of the firm, and no such
license shall hereafter be issued to a corporation: *Provided,*
*however,* that any corporation now holding such a license
in its name may designate the person or persons who shall
be entitled to a renewal or re-issue of such license for the
license period beginning on November 1, 1906: *Provided*
*further, however,* that such person or persons shall duly
qualify by complying with all the laws and ordinances in
force at the time in the city of Chicago."

The answer admits that the relatrix had conducted a
saloon at 4359 Carroll avenue from May 1, 1908, to April
30, 1911, and avers that she executed an assignment to
G. B. Gunderson of the right to the renewal or re-issue
of her license at the expiration of the period for which
it was issued, April 30, 1911; that on the 26th of April,
1911, Gunderson executed to Peter Drappa an assignment
of the right to the renewal or re-issue of the license,. and
in pursuance of such assignment a license was issued to
Drappa to keep a dram-shop at 4359 Carroll avenue for
the period from May 1, 1911, to October 31, 1911, and
on November 1, 1911, such license was renewed or re-
issued to him for the period from November 1, 1911, to
April 30, 1912, and he is, and has been since May 1, 1911,
keeping a dram-shop under such license; that Drappa has
assigned to Gunderson the right to the renewal of the
license at the expiration of the period for which it was

issued, and that Gunderson is now the owner of the right to the renewal or re-issue of such license. The answer further avers that only 7251 saloon licenses can be issued under the ordinances; that all licenses issued for the period ending October 31, 1911, have been renewed or applications for renewals are pending; that no new or additional licenses are authorized by the ordinances until the population of the city of Chicago reaches 3,700,000; that according to the last census the population does not exceed 3,600,000, and no license can issue to appellee unless it be taken from some person by whom it is now held. The circuit court sustained a demurrer to the answer, and the defendant electing to stand by his answer, a judgment was rendered awarding the writ.

The appellee's contention that the ordinance is invalid is based upon the limitation of the number of licenses to one for every five hundred of the population, and upon the granting of a right of renewal to the holder of a license or his assignee.

The business of selling intoxicating liquor is attended with danger to the community and is a recognized subject for regulation by the police power of the State. There is no inherent right to carry it on and it may be entirely prohibited. The manner and extent of its regulation, if permitted to be carried on at all, are to be determined by the State, so as to limit, as far as possible, the evils arising from it. (*Crowley* v. *Christensen,* 137 U. S. 86.) In cities, authority for such regulation or prohibition has been conferred by the legislature upon the city councils, and all sales of intoxicating liquor are unlawful and are prohibited unless made by virtue of a license granted under an ordinance. The power conferred upon the city is co-extensive with that of the State, and includes authority to adopt any means to reduce the evils arising from the sale of intoxicating liquor, reasonably adapted to that end, which do not violate constitutional rights. The legislature cannot

confer any power which it does not itself possess, and cannot authorize a discrimination between individuals not founded on a reasonable difference, for it could not itself make such discrimination. The power to license, regulate and prohibit can be exercised only through an ordinance of the city, and such ordinance must be a general one, specifying the manner and conditions of the issue of the license, the power conferred by it, and uniform in its operation upon persons within its scope. (*People* v. *Village of Crotty,* 93 Ill. 180; *People* v. *Cregier,* 138 id. 401; *People* v. *Mount,* 186 id. 560.) In *People* v. *Cregier* an ordinance prohibited the granting of a license to keep a dram-shop within a certain district in the city, and the court upheld this provision, saying (p. 419): "If, on the other hand, a discretion is reserved as to the number or location of the dram-shops to be licensed, such discretion may be exercised by the officers charged with the duty of issuing the licenses, and if the ordinance restricts the location of dram-shops to certain portions of the municipal territory, said officers have no power to issue licenses except in obedience to said restrictions."

The city council having determined that the interests of the municipality will be subserved by limiting the number of saloons within its boundaries, its discretion cannot be controlled by the court, even if the latter should not agree with the conclusion. No one's constitutional right is impaired, and if the limitation prevents some persons from keeping dram-shops who might do so under an unlimited ordinance, that result is merely an incidental effect, which does not affect the validity of the limitation imposed with a view to the public welfare in the reasonable exercise of the police power of the State. Everybody has an equal right to apply for a license, and when the number authorized by the ordinance has been granted everybody is equally excluded from the business. It was said in *People* v. *Cregier, supra,* though the specific question was not in-

volved in that case (p. 421): "There can be no doubt
that said reservation, by the ordinance, of a discretion as
to the number of licenses to be granted was valid, as it
was clearly a reasonable exercise of the power over the
subject given to the village board by the statute, and the
same thing appears inferentially from the fact that pre-
cisely the same discretion is given by the Dram-shop act
to county boards in respect to the territory under their
jurisdiction." The limitation of the number of saloons
within a municipality in proportion to the population has
been uniformly sustained by the courts. *Decie* v. *Brown*,
167 Mass. 290; *In re Jugenheimer*, 75 Neb. 401; *State* v.
*Common Council of the City of Northfield*, 94 Minn. 81;
*Schweirman* v. *Town of Highland Park*, 113 S. W. Rep.
(Ky.) 507.

The legislature, in conferring upon cities and villages
the power to license, regulate and prohibit the sale of in-
toxicating liquors, prohibited the issue of a license to ex-
tend beyond the municipal year in which it may be granted.
(Hurd's Stat. 1911, clause 46, p. 265.) The ordinance in
question provides that the licensee or his legal representa-
tive shall have the right to a renewal or re-issue of the
license upon a compliance with the ordinances of the city,
and that such licensee or his legal representative may as-
sign such right to a renewal or re-issue, and the assignee,
upon a compliance with the ordinances, shall be entitled to
a renewal or re-issue of the license in his own name, and
successive assignments are authorized. It is contended that
this provision of the ordinance violates the statutory limi-
tation of the license to the municipal year in which it is
issued, and in our judgment this contention must be sus-
tained. The effect of the ordinance is to authorize the is-
sue of a license for one year, renewable indefinitely. The
rights of the licensee do not terminate with the municipal
year but continue indefinitely. A license for one year, re-

newable annually, does not differ, in substance, from an indefinite or perpetual license, as a lease for one year, renewable annually for ten years, at the option of the lessee, does not differ from a lease for ten years, with an option to the lessee to terminate it at the end of any year. It is true, the licensee or his grantee must comply with the ordinances of the city to obtain a renewal, but so he must to retain the license during the year. The effect of the ordinance is that the license, once issued, entitles the holder or his assignee to a perpetual continuance of the privileges granted, subject to the ordinances of the city. The city has no discretion about the continuance of the license. If the licensee or the assignee complies with the ordinances he has an absolute right to the continuance of the license by virtue of the fact, only, that he holds a license. The intention of the statute is that the right of the licensee shall cease with the municipal year and that the city council shall have no right to grant him any powers beyond that period. Calling the subsequent term a renewal or re-issue does not change the fact that the ordinance attempts to extend the rights conferred by the license beyond the municipal year.

The ordinance is valid in so far as it limits the number of licenses that may be issued, but invalid so far as it attempts to give a right of renewal to the licensee or his assignee. Where there are more applicants for license than licenses to be issued, as the record here shows, a reasonable discretion is reserved to the mayor to determine to whom the license shall issue.

The judgment is reversed and the cause remanded, with directions to overrule the demurrer to the answer.

*Reversed and remanded, with directions.*