People of the State of Illinois on the relation of
Manuel Silverman, Appellee, v. City of Chicago, a
municipal corporation; William T. Prendergast,
City Collector; Richard J. Daley, Mayor of Chi-
cago; Timothy J. O'Connor, Commissioner of
Police, and John C. Marcin, City Clerk, Appellants.

Gen. No. 46,979.

First District, Second Division.
February 19, 1957.
Released for publication April 2, 1957.

John C. Melaniphy, Corporation Counsel of the City of Chicago, for defendants-appellants; Sydney R. Drebin, and Robert J. Collins, Assistant corporation counsel, of counsel.

Libit, Lindauer and Henry, of Chicago, for plaintiff-appellee; L. Louis Karton, of Chicago, of counsel.

PRESIDING JUSTICE ROBSON delivered the opinion of the court.

This is a mandamus action by plaintiff, owner of a retail establishment licensed to sell at retail food products, soaps, tobaccos and beverages, requesting that chapter 147 of the Municipal Code of Chicago be declared to be in violation of plaintiff's rights under the laws of the State of Illinois, and that defendants be commanded to issue to plaintiff a Class B City Retailer's Liquor License upon the payment of a license fee not to exceed $250. The trial court denied defendants' motion to strike the petition for mandamus and entered a judgment order directing that the defendants and the Mayor of the City of Chicago, as local liquor commissioner, issue to plaintiff a Class B liquor license at a fee not to exceed $250 per year. Defendants appeal from this order.

In 1955 the Legislature amended Article IV, Section 1, of the Liquor Control Act (Ill. Rev. Stat. 1955, chap. 43, par. 110) to read as follows:

"In every city . . . the city council . . . shall have the power by general ordinance or resolution to determine the number, kind and classification of licenses, for sale at retail of alcoholic liquor not inconsistent with this Act and the amount of the local licensee fees to be paid for the various kinds of licenses to be issued . . . *except Class B retailer's license shall not exceed $250 per year* . . . ; and to establish such further regulations and restrictions upon the issuance of and operations under local licenses not inconsistent with law as the public good and convenience may require; . . . provided, however, that in the exercise of any of the powers granted in this section, the issuance of such licenses shall not be prohibited except for reasons specifically enumerated in Sections 2, 8, 8a and 21 of Article VI of this Act." (Emphasis added.)

The 1955 amendment, consisting of eleven words pertaining to the Class B license, is italicized.

The trial court held that the amendment by the Legislature in 1955 pertaining to Class B licenses made mandatory the issuance of such license wherever retail liquor licenses are permitted by ordinance. The ordinance relating to retail liquor licenses (Chapter 147 of the Municipal Code of Chicago) adopted prior to this amendment contains no such classification. The same ordinance is still in full force and effect.

The first question that we must determine is whether the amendment in question required the City to provide for Class B licenses.

■■ Plaintiff contends that the amendment to Article IV of Section 1 setting a maximum fee for local Class B licenses was intended by the Legislature to

pre-empt the autonomy of the local commissioner in the classification of retail licenses at the local level. Article IV relates to local control over the retail sale of liquor and Article V to the licensing powers of the State Liquor Control Commission. We must decide whether the 1955 amendments to these articles establishing the types of retail license to be issued by the State Commission, setting the fees to be charged by it and limiting the fee to be charged by a local commission for a so-called Class B license, inhibits the freedom of a local commission to determine the kind and classification of license to be issued by it. A careful reading of the language of Article IV, Section 1, as amended in 1955, reveals no ambiguity. It is clear that the power to determine the kind and classification of local licenses is still left entirely to the discretion of the local governing body. This discretionary power with respect to the enactment of liquor control ordinances by the local governing body has long been recognized by this State. The People v. Village of Crotty, 93 Ill. 180 (1879); The People v. Cregier, 138 Ill. 401 (1891); The People v. Mount, 186 Ill. 560 (1900); The People v. Harrison, 256 Ill. 102 (1912); The People v. Wanmer, 276 Ill. 460 (1917). In Hall v. City of Kewanee, 379 Ill. 176 (1942), our Supreme Court said (p. 180):

"It is true, and it is conceded in the brief for the appellees, that the city may determine the number, kind and classification of licenses for sale at retail of alcoholic liquor not inconsistent with the statute, and may determine the amount of license fee to be paid for the respective kinds of licenses to be issued and may establish or fix such further regulations and restrictions upon the issuance and operation under local licenses not inconsistent with the law, as the public good and convenience may require. It is not even urged in the briefs that the Liquor Control act in any way

69

amended or modified or attempted to amend or modify the law in regard to cities under the commission form of government, nor the manner in which ordinances must be passed by a city council under that form of government. *It is to be noted that the provisions of the Liquor Control act are permissive only,—i.e., that the city may determine certain things and make certain regulations and restrictions. There is no mandatory language requiring the city to pass any such acts except at its own discretion and the case therefore falls squarely within the authority of People v. Wanmer, supra."* (Emphasis added.)

Plaintiff cites two cases involving a mandamus action for the issuance of a local Class B license. The local governing body had provided in each instance by ordinance that a retailer might have either a Class A or a Class B license. The Great Atlantic and Pacific Tea Co. v. The Mayor of Danville, 367 Ill. 310 (1937); Walgreen Co. v. Garland, 316 Ill. App. 635 (1942). The question presented in each case was whether, *where such an ordinance had been enacted,* the local governing body could refuse to issue a license for a reason not set forth in the statute. In the case at bar no such ordinance has yet been enacted and the issue presented in the *Danville* and *Garland* cases is, therefore, not pertinent.

Plaintiff cites no case which inhibits the power of a local government *to classify* the licenses issued by it; there is nothing cryptic about the language of Article IV, Section 1, on this point. The 1955 amendment to that section adds no language that can be construed to make a Class B license mandatory, but merely sets a maximum fee where this type of license is adopted. We are of the opinion that the adoption of a Class B type of liquor license pursuant to the amendment of the statute is permissive and not mandatory.

There is also another point which in our opinion is controlling in the instant case. If the pro-

70

visions of the Local Liquor Control Act, as amended in 1955, were mandatory (we have held they are not), and the City Council were duty bound to enact an ordinance providing for a Class B license, would the defendants in the instant case have the power to comply with the writ of mandamus without the adoption of an ordinance providing for a Class B license? The courts of Illinois have uniformly held that an ordinance must be in effect before city officials can issue a license. The People v. Village of Crotty, supra; The People v. Mount, supra; The People v. Harrison, supra; The People v. Wanmer, supra. The instant case does not concern an ordinance. The City Council whose members have not been made parties to these proceedings have not seen fit to enact an ordinance relative to a Class B license. If the statutory amendment were construed to be mandatory, plaintiff would have to compel the City Council to enact an ordinance. The ministerial officers, who are parties defendant to this action, are powerless to perform this act. They have no authority under the statute in question to do so. Mandamus will lie only in cases where the petitioner shows a clear right to the writ and a clear neglect of duty on the part of the defendant to perform the act sought to be enforced. The People v. City of Chicago, 277 Ill. 394 (1917); The People v. City of Chicago, 280 Ill. 576 (1917); Hooper v. Snow, 325 Ill. 53 (1927); The People v. Dunne, 258 Ill. 441 (1913). There has been no such showing in this case.

We conclude, therefore, that the trial court erred in issuing the writ of mandamus against the defendants in the instant case. The order of the trial court is reversed.

Order reversed.

SCHWARTZ and McCORMICK, JJ., concur.