Maywood-Proviso State Bank, a National Banking Association, as Trustee Under Trust #1646, The Flame, Inc., an Illinois Corporation, and Peter G. Makris and Gloria Makris, His Wife, Plaintiffs-Appellants, v. The City of Oakbrook Terrace, a Municipal Corporation, Walter C. Padgett, et al., Defendants-Appellees.

Gen. No. 65–48.

Second District.

February 1, 1966.

Rehearing denied March 11, 1966.

John C. Polales and Daniel H. Pappas, of Chicago, for appellants.

Hubert J. Loftus, of Addison, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

Plaintiffs, Maywood-Proviso State Bank, as Trustee; The Flame, Inc.; and Peter G. Makris and Gloria Makris, as beneficiaries under the aforementioned trust, brought this suit against the defendants, The City of Oakbrook Terrace and certain city officials, to enjoin the enforcement of a general liquor control ordinance in its application to the property held in said trust with reference to closing hours in connection with the sale of alcoholic beverages. The plaintiffs appealed from a decree rendered in favor of the defendants.

The plaintiffs contend that by virtue of a preannexation agreement entered into in December of 1962 between their predecessors in title to the real estate in question and the defendant municipality, it was agreed, among other things, that any liquor license granted to the owners of the real estate in question would permit the serving of alcoholic beverages up to 3:00 a. m. on Monday through Friday and up to 4:00 a. m. on Saturday, Sunday and holidays; and that by virtue of this agreement, a subsequent general liquor ordinance, adopted by the city in October of 1964, which prohibited the sale of alcoholic beverages after 1:00 a. m. on Monday through Friday and after 2:00 a. m. on Saturday, Sunday and legal holidays, could not be applied to the real estate in question. Defendants urge that the provisions of the agreement relative to the liquor license are contrary to the Liquor Control Act and therefore are void and unenforceable.

The preannexation agreement entered into between the city and plaintiffs' predecessors in December of 1962 provided that the owners of the land in question would cause it to be annexed to the city, and the city would cause certain ordinances, relative thereto, to be enacted. The city agreed it would "cause the property to be given a zoning classification as a special use permit" and would

283

adopt such other ordinances as would be necessary to permit the following uses on the property:

"1. b) 1. The serving of alcoholic beverages for consumption on the premises.

2. The granting of a liquor license for purposes of allowing alcoholic beverages to be served on said premises which said license shall permit the serving of alcoholic beverages up to 3 A. M. on Monday, Tuesday, Wednesday, and Thursday and Friday and up to 4 A. M. on Saturday and Sunday and legal Holidays.

. . .

4. It is expressly understood that any changes in the requirements of any relevant ordinances which may affect the premises shall conform to the spirit and intent of this agreement and that this agreement is made as an inducement to 'Ellison' to annex, develop and operate said property and the establishment thereon in the manner above described and 'Ellison' is entitled to further change his position in reliance upon this agreement."

The agreement further provided:

"2. 6. Upon execution of this agreement by the parties hereto, the City agrees to enact such resolutions or ordinances as may be necessary to permit the City to comply with the terms of this agreement."

The city adopted a contract ordinance authorizing the execution of the agreement on behalf of the city and thereafter adopted an ordinance annexing the property in question.

In 1963, the legislature added to the Municipal Code, division 15.1 relating to annexation agreements (Ill Rev Stats .1965, c 24, pars 11–15.1–1 through 11–15.1–5). Section 11–15.1–1 provides:

"The corporate authorities of any municipality may enter into an agreement with one or more of the owners of record of land in any territory which may be annexed to such municipality as provided in Article 7 such agreement to be valid and binding for a period of not to exceed 5 years from the date of execution thereof."

As to the scope of such agreements, section 11–15.1–2 provides:

"Any such agreement may provide for the following as it relates to the land which is the subject of the agreement:

". . .

"(f) Any other matter not inconsistent with the provisions of this Code, nor forbidden by law.

"Any action taken by the corporate authorities during the period such agreement is in effect, which, if it applied to the land which is the subject of the agreement, would be a breach of such agreement, shall not apply to such land without an amendment of such agreement."

Section 11–15.1–4 provides that such an agreement is binding upon successor owners of the land and successor municipalities and may be enforced by appropriate legal proceedings. Section 11–15.1–5 provides that any agreement .entered into prior to the effective date of the Amendatory Act of 1963 which was executed pursuant to a two-thirds vote of the corporate authorities and which contains provisions not inconsistent with section 11–15.1–2 is valid and enforceable for the effective period of the

agreement or for five years from the date of execution, whichever is shorter.

The parties concede that the agreement in question was executed in the manner set forth in section 11–15.1–5 and is, therefore, valid and enforceable for a period of five years from December 1962, if the provisions thereof referred to are not forbidden by law. If the provisions are forbidden by law, then the general liquor control ordinance, which would compel an earlier closing hour on the premises, would be applicable.

■■■■ The power of a municipality relative to traffic in intoxicating liquors is derived entirely from the State. The control over such traffic is a necessary incident to the police powers of the State—not of the political subdivisions or municipalities thereof. Heidenreich v. Ronske, 26 Ill2d 360, 365, 187 NE2d 261 (1962) ; Henson v. City of Chicago, 415 Ill 564, 569, 114 NE2d 778 (1953) ; Sager v. City of Silvis, 402 Ill 262, 265, 83 NE2d 683 (1949). The State may delegate this power to license, regulate or prohibit traffic in intoxicating liquors to a municipality, but the municipality has only that power delegated to it and no other. The Liquor Control Act (Ill Rev Stats 1965, c 43, par 94 et seq.) contains the delegation of this power to municipalities and prescribes the limits beyond which a municipality may not act. Heidenreich v. Ronske, supra; Henson v. City of Chicago, supra. Any ordinance or act of a municipality beyond the legislative authorization of the Liquor Control Act is without legal force or validity.

Article I, section 1 of the Act (Ill Rev Stats 1965, par 94) provides that the Act is to be liberally construed to the end that the health, safety and welfare of the people be protected, and temperance in the consumption of alcoholic liquors be fostered and promoted by sound and careful control and regulation.

Section 1 of Article IV of the Act (Ill Rev Stats 1965, c 43, par 110) contains the delegation by the State to

cities and other political subdivisions of "the power by *general* ordinance or resolution to determine the number, kind and classification of licenses, for the sale at retail of alcoholic liquor not inconsistent with this Act . . . and to establish such further regulations and restrictions upon the issuance of and operations under local licenses not inconsistent with law as the public good and convenience may require; . . . ." (Italics ours.)

The Act further provides that a license "shall be purely a personal privilege, good for not to exceed one year after its issuance . . . and shall not constitute property, . . . nor shall it be alienable or transferable, . . . ." (Ill Rev Stats 1965, c 43, par 119.)

The agreement and ordinance authorizing the agreement in this case are manifestly contrary to the provisions of paragraph 119 of the Liquor Control Act. By the agreement, the city purported to bind itself to grant a liquor license for use on these particular premises for the term of the agreement which, under the statute, was five years. Had the parties intended only that the land be given a zoning classification which would have permitted the sale of alcoholic beverages thereon, then subparagraph 1. (b) 1. of the agreement requiring such a zoning classification, was sufficient for this purpose. But the agreement of the parties went further and provided for the adoption of such other ordinances as may be necessary to authorize the use set forth in subparagraph 1. (b) 2, namely: "The granting of a liquor license for purposes of allowing alcoholic beverages to be served on said premises which said license shall permit the serving of alcoholic beverages up to 3:00 a. m. on Monday, Tuesday, Wednesday, and Thursday and Friday and up to 4 a. m. on Saturday and Sunday and legal Holidays." We believe that it is implicit in this subparagraph that the city is obligated to provide such a license for the five-year period.

287

■ The city did not have the power or authority to contract, in effect, for the issuance of a liquor license to a particular location for beyond the period of one year. The provisions relative to the granting of such a license and the ordinance authorizing the execution of the agreement containing such provisions are without legal force and are void. People v. Harrison, 256 Ill 102, 109, 99 NE 903 (1912); Karen v. Bartholomae & Roesing Brewing & Malting Co., 195 Ill App 21, 23, 24 (1st Dist 1915); 25 ILP, Liquor, Sec 63.

■ In Harrison, the Court held that part of an ordinance invalid which attempted to give to a liquor licensee, or his legal representative, the right to a renewal or reissue of the license upon compliance with the city ordinances; as well as the right to assign such right to renewal or reissue. The court held that the effect of this ordinance was to authorize the issuance of a license for one year, renewable indefinitely; and that the city had no discretion about the continuance of the license. The attempt to extend the rights conferred by the license beyond the time permitted by statute was held invalid. The effect of the contract, and ordinance authorizing the contract, in the case at bar, would likewise be to confer rights beyond the time permitted by statute. Such an attempt is without authority and is void.

■ The general liquor control ordinance adopted by the city in October of 1964, which provided for closing hours of 1:00 a. m. on certain nights and 2:00 a. m. on other nights, was a valid exercise of the power delegated to it by the State. The Liquor Control Act provides that a city council may restrict "the permissible hours for the sale of alcoholic liquors under such licenses in its political subdivision as the public good and convenience may require." (Ill Rev Stats 1965, c 43, par 129.)

■ Such ordinance was, and is, a valid general ordinance governing the hours of sale of alcoholic liquor by all persons so engaged within its political subdivision.

288

The plaintiffs contend that the ordinance authorizing the agreement with their predecessors in title, and the agreement, permitted and required that the closing hours set forth therein be applied to them. Such a distinction, as to plaintiffs, could not be deemed a reasonable classification, and such an ordinance is special, and not general, in nature. People v. Kaelber, 253 Ill 552, 555, 97 NE 1068 (1912). The power conferred by the State upon a municipality to control liquor traffic by "general ordinance or resolution" is granted by paragraph 110 of the Liquor Control Act, and is supplemented by paragraph 129 thereof. Any purported attempt by a municipality to grant special privileges or rights relative to a certain liquor licensee is of no effect. All ordinances of a city relative to liquor licenses must operate uniformly on all persons within the class to which they relate and must not be unjustly discriminatory or arbitrary in their classification. People v. Harrison, supra; Moore v. Mayor of Danville, 232 Ill 307, 310 (1908) ; 25 ILP Liquor, sec 53.

In the Harrison case, the court stated at pages 106 and 107:

> "The legislature cannot confer any power which it does not itself possess, and cannot authorize a discrimination between individuals not founded on a reasonable difference, for it could not itself make such discrimination. The power to license, regulate and prohibit can be exercised only through an ordinance of the city, and such ordinance must be a general one, specifying the manner and conditions of the issue of the license, the power conferred by it, and uniform in its operation upon persons within its scope. (People v. Village of Crotty, 93 Ill 180; People v. Cregier, 138 id. 401; People v. Mount, 186 id. 560.)"

In the Moore case an ordinance was held invalid, as being discriminatory and unreasonable, which attempted

to render one block, with the exception of one particular lot therein, as nonliquor license territory.

 In the case at bar, the agreement between the city and plaintiffs' predecessors in title, elsewhere purports to bind the city to conform to the spirit and intent of the agreement if any changes are made in the requirements of any ordinances which may affect the premises; and to enact such resolutions or ordinances as may be necessary to permit the city to comply with the terms of the agreement. To the extent that these provisions purport to obligate the city to take certain action relative to the granting of a liquor license or the classification, terms or restrictions thereunder with reference to the premises in question, such provisions are likewise void.

 The right to deal in intoxicating liquors is not an inherent or alienable right; a right of citizenship, or one of its privileges and immunities; nor is it a property right. A license to sell liquor is not a contract and it creates no vested right. Such license constitutes a personal privilege to pursue a business peculiarly subject to police regulation and control. Great Atlantic & Pacific Tea Co. v. Mayor and Com'rs of Danville, 367 Ill 310, 317, 11 NE2d 388 (1937); Boerner v. Thompson, 278 Ill 153, 158, 115 NE 866 (1917); 25 ILP, Liquor, Sec 62. The right given by license and the controls and regulations imposed relative thereto are determined by the requirements of "the public good and convenience." Great Atlantic & Pacific Tea Co. v. Mayor and Com'rs of Danville, supra, 314, 315. These determinations and the underlying authority to make them are not to be curtailed by private contracts or interests. The exercise of the police power, delegated by the State to a municipality, should be consistent with the purposes set forth in paragraph 94 of the Liquor Control Act. A municipality may not, by private contract, deny to itself the power or authority lawfully vested in it to act relative to the regu-

lation of liquor traffic where it deems action necessary to the public good and convenience.

Plaintiffs contend that the agreement does not require the issuance of a liquor license for a period of five years—the term of the agreement. We cannot agree with this contention. When read in its entirety, the agreement manifests an intent that the city be bound to grant a liquor license for the serving of alcoholic beverages on the premises in question for the term of the agreement—five years—and that under such license the serving of such beverages be permitted until 3:00 a. m. on Monday through Friday and up to 4:00 a. m. on Saturday, Sunday and holidays.

For the reasons set forth above, such agreement is contrary to the power and authority given to the municipality under the Liquor Control Act and is, hence, "forbidden by law," and not permitted under the provisions of section 11–15.1–2(f) of the Municipal Code. Accordingly, the decree of the trial court is affirmed.

Decree affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.