VINTAGE '76, INC., Plaintiff-Appellant, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-1899

Opinion filed November 13, 1979.

Thomas J. Murphy, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Gail A. Moreland, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

In May of 1978, the local liquor commissioner of the village of Schiller Park revoked the 1977 liquor license issued to Vintage '76 d/b/a Second Chance and denied a 1978 renewal application. In accordance with section 8 of article VII of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 153), the matter was tried de novo by the Illinois Liquor Control Commission and affirmed. The circuit court of Cook County also affirmed. The basic issue raised on this appeal is whether the local commissioner had the authority to revoke a liquor license for dramshop's failure to comply with a statutory provision (Ill. Rev. Stat. 1977, ch. 43, par. 126a) imposing a duty to furnish records upon Commission request.

Plaintiff dramshop, Vintage '76, was issued a liquor license to operate a tavern in Schiller Park, Illinois. In December of 1977, the local liquor control commissioner, who was also the mayor of Schiller Park, initiated an investigation into the corporate structure of Vintage '76. Sometime prior to January 13, 1978, the mayor issued a notice of hearing and a records production order pursuant to the Liquor Control Act. This act delineates the powers and duties of the local liquor commissioner (Ill. Rev. Stat. 1977, ch. 43, par. 108) and imposes an affirmative duty on all licensees to supply these records upon request (Ill. Rev. Stat. 1977, ch. 43, par. 126a ("It shall be the duty of every retail licensee to make books and records available upon request at all times for the purpose of investigation and control by the Illinois Liquor Control Commission or any local liquor control commission having jurisdiction over the licensee")). The mayor requested production of the corporate charter, record books, minutes, annual corporate reports, Federal income tax returns for 1976 and 1977, copies of all payroll records, W-2 forms, and checks issued in 1976 and 1977, a copy of the lease, and any documents bearing on the dissolution of Vintage '76.

An order of January 13 continued the hearing for seven days and reiterated the section 126a request. On March 2, plaintiff's attorney turned over two of the requested items and listed the remaining documents as "no such record kept," "unavailable," or "unable to locate." On May 19, the seventh scheduled hearing, after six prior hearings had been set and then continued, the mayor denied plaintiff yet another continuance, and revoked plaintiff's license. He also denied plaintiff's renewal application on the ground that the license had been revoked "for cause" and under Village ordinance and State law, he was prohibited from renewing it.

Plaintiff appealed the local order and the State Liquor Commission held a de novo hearing to review the decision. At the Commission hearing in August of 1978, the officers of Vintage '76 appeared and presented evidence. However, the attorney prosecuting the appeal for plaintiff was

not present for the call and still another continuance was requested. It was denied, but the call was delayed until later in the morning. When the attorney, Thomas Murphy, had still not arrived, the other lawyer, John Biestek, who had represented plaintiff at the local level and who was present to give testimony concerning those proceedings, decided to present the case until Murphy arrived.

One of plaintiff's owners, Conrad Hillesheim, claimed that he had been present at four of the scheduled hearing dates but, when pressed, could remember only one date, April 14. This April date happened to be the same one that was continued at the mayor's behest. The Village attorney testified in rebuttal that he did not see Hillesheim or the others who had been subpoenaed for the April 14 date. The mayor also stated that although his secretary had seen plaintiff's attorney on that date, she had not seen any of the other parties.

In further testimony, plaintiff's witnesses maintained that the records requested were still unavailable as they were being held by the corporation's accountant or, in the case of other records, by the former attorney. When Murphy finally arrived, he examined Biestek about the prior hearings. Biestek stated that a representative from his office had appeared at the May 19 hearing requesting a continuance from the mayor. He did admit, however, that he had called the village attorney only the evening before to say that he would be unavailable the following day. The cause of his unavailability was challenged in cross-examination:

> "VILLAGE ATTORNEY: Do you recall at that time saying that you feel that the Liquor Commissioner was abusing his discretion; that you did not intend to appear; that your client would not appear and that you were not of mind to deliver any of the requested documents?
>
> BIESTEK: * * * No, I did not. I indicated to you that I was on trial the next day and could not be there."

Following this de novo hearing, the Commission affirmed the mayor's decision. On petition for rehearing, plaintiff's lease was produced as well as some of the other documents. The dramshop was closed on August 31, 1978, and the petition for rehearing denied on September 1. After the order was affirmed by the circuit court, this appeal was taken.

Plaintiff contends that the mayor's sole remedy for noncompliance with a production order is set out in section 12 of article III of the Liquor Control Act, which provides in part:

> "Any Circuit Court, or any judge thereof may by order duly entered, require the attendance of witnesses and the production of relevant books subpoenaed by the State commission and the court or judge may compel obedience to its or his order by proceedings for contempt." (Ill. Rev. Stat. 1977, ch. 43, par. 108(9).)

In support of this contention, plaintiff cites two cases, *Boettcher v. Howard Engraving Co.* (1945), 389 Ill. 75, 58 N.E.2d 866, and *Walter Cabinet Co. v. Russell* (1911), 250 Ill. 416, 95 N.E. 462, which state that a contempt citation and not judgment on the case is the proper remedy for noncompliance with a production or interrogatory demand. However, both cases clearly state that contempt is the only remedy *in the absence of statute.* Although plaintiff denies such an authorizing provision exists under the Liquor Control Act, the State correctly points to both sections 7b of article VI and 5 of article VII of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, pars. 126a, 149). Section 7b of article VI, set out above, imposes a statutory duty on liquor licensees to produce documents. Section 5 of article VII provides a remedy for noncompliance with or violation of any section: "The local liquor control commissioner may revoke or suspend any license issued by him if he determines that the licensee has violated any of the provisions of this Act ° ° °.''

■■■ Under these two statutes it is manifest that the local commissioner, upon determining that Vintage '76 had not produced the documents, and after giving a fair amount of time to comply, had the authority to revoke the dramshop license. That a substantial burden has been placed on the dramshop licensee is without question. (See *Wessel v. Carmi Elks Home, Inc.* (1973), 54 Ill. 2d 127, 131, 295 N.E.2d 718.) Nevertheless, one who applies for and accepts a liquor license also assents to the conditions imposed by the statutes and rules governing its issue. (*Daley v. Berzanskis* (1971), 47 Ill. 2d 395, 399, 269 N.E.2d 716, *cert. denied* (1971), 402 U.S. 999, 29 L. Ed. 2d 166, 91 S. Ct. 2173; *Malkan v. City of Chicago* (1905), 217 Ill. 471, 477, 75 N.E. 548.) In the case at bar, the statute with which plaintiff must comply mandates production of records on request. For noncompliance, there are two courses of action open to the local commissioner: he can force compliance by requesting circuit court enforcement of the subpoena, or he can revoke the dramshop license in accord with section 5 of article VII. The cases cited by plaintiff strengthen this conclusion; the contempt power, where another remedy is provided by statute (here *revocation*), is an *alternative* and not an *exclusive remedy.* To hold otherwise would be to contravene the statute and to suggest that if a dramshop owner were willing to suffer contempt, his tavern could remain open with no further sanction available to the commissioner. This interpretation, as urged by plaintiff, patently contradicts the legislative mandate.

■■ The sole remaining question is whether the mayor's action was so arbitrary and unreasonable as to justify its reversal. A liquor license is a privilege given by the State to allow participation in an otherwise illegal business. Any statutory conditions imposed on its issuance call for strict compliance by the licensee. (See, *e.g., Kenessey Enterprises, Inc. v.*

*Illinois Liquor Control Com.* (1978), 63 Ill. App. 3d 975, 380 N.E.2d 996; *Maywood-Proviso State Bank v. City of Oakbrook Terrace* (1966), 67 Ill. App. 2d 280, 214 N.E.2d 582.) Regulation of the sale of liquor is administered by local commissioners who act in the interest of their immediate citizenry. Because of the legislatively perceived threat to the surrounding community raised by the sale of liquor and licensing of dramshops, a considerable degree of discretion has been vested in local liquor control commissioners. (*Stevens v. County of Lake* (1974), 24 Ill. App. 3d 51, 55, 320 N.E.2d 263.) Problems arising from the regulation of liquor have long been regarded as distinctly local in nature (see *Day v. Illinois Liquor Com.* (1963), 39 Ill. App. 2d 281, 287, 188 N.E.2d 883), and thus particularly suited to community control.

Our review of the mayor's action is limited to a determination of whether he acted arbitrarily, in clear abuse of his discretion, or whether the order entered was against the manifest weight of the evidence. (*E.g., Weinstein v. Daley* (1967), 85 Ill. App. 2d 470, 476, 229 N.E.2d 357.) The hearing by the State Commission illustrates the equivocating nature of the testimony by plaintiff's officers and attorney when asked about the availability, or even existence, of subpoenaed records and documents. These same witnesses were equally vacillating when attempts were made to focus on which of the hearings they had actually attended. The record contains many similar instances of dilatory conduct and general disregard for the commissioner's orders. See generally *Askew v. Daley* (1978), 62 Ill. App. 3d 370, 379 N.E.2d 75.

Under these circumstances, to deny the commissioner power to revoke the license would be to allow suspect dramshops to remain open while their owners delayed compliance with the statute. (Vintage '76 d/b/a Second Chance was finally closed about 11 months after the mayor's original production order.) We find that the mayor acted reasonably in revoking the license where he gave the parties repeated opportunities to comply with his production order. When the dramshop's intent not to comply became evident, he had the authority under the Act to revoke the dramshop license or to go into court to enforce the subpoena. His decision to revoke the license was not an abuse of discretion and was not against the manifest weight of the evidence and must be affirmed. See generally, *e.g., Daley v. License Appeal Com.* (1956), 11 Ill. App. 2d 421, 138 N.E.2d 73.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DOWNING and HARTMAN, JJ., concur.