(No. 37138—)

OAK PARK NATIONAL BANK, Trustee, *et al.,* Appellants, v.
THE VILLAGE OF BROADVIEW *et al.,* Appellees.

*Opinion filed February 1, 1963.—Rehearing denied March 27, 1963.*

LINDA LILLION B. ROZHON, of Oak Park, and ROBERT
S. FIFFER and ANNA R. LAVIN, of Chicago, for appellants.

ALBERT J. JANTORNI, JOHN F. SULLIVAN, and JOHN
M. SULLIVAN, of Chicago, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the
court:

This case involves the validity of an ordinance of the
village of Broadview which reduced the permissible number
of Class C liquor licenses from two to one. The superior
court of Cook County held the ordinance valid and dis-
missed the complaint, which asserted its invalidity. The

plaintiffs have appealed directly to this court upon the trial judge's certificate that the validity of an ordinance is involved and the public interest requires that the appeal be taken to this court. Ill. Rev. Stat. 1961, chap. 110, par. 75.

The person primarily interested as plaintiff appears to be Frank C. Slater, who is described as "Frank C. Slater, d.b.a. Haeger's.". Daisy Slater, his wife, is also a plaintiff, but her interest, if any, is not stated. And while the Oak Park National Bank, as trustee, is the first named plaintiff in the complaint, the nature of its interest does not appear in the complaint or elsewhere in the record.

In 1947 Slater and his wife opened a restaurant in the village of Broadview. In 1954, Frank C. Slater requested the issuance of a liquor license. No unissued license was then available, but the village board increased the number of liquor licenses available by amending its ordinance, and a license was issued to him. In 1957, Slater requested a liquor license which would allow him to serve alcoholic beverages at the bar in addition to serving customers seated at tables. The board again amended its ordinance to make available such a license (designated as Class C) and such a license was issued to Frank C. Slater.

In May of 1958, Slater ceased to operate the establishment, which was leased to Robert Haeger, to whom a Class C license was issued. In May of 1959, a judgment was entered against Haeger in a forcible entry and detainer action, and Slater resumed operation of the business. On or about July 1, 1959, Slater applied for the issuance of a Class C liquor license, in the name of "Frank C. Slater, doing business as Haeger's." The application was denied, as was a subsequent application made on July 14.

Slater appealed to the Illinois Liquor Control Commission, and the Commission remanded the matter to the local liquor license commissioner to conduct a hearing and to report back to the Commission on August 31, 1959. Such

a hearing was had, and the local liquor license commissioner filed his report, dated August 25, 1959, in which he set forth his reasons for denying the application. In the meantime on August 24, the village board of trustees passed an ordinance reducing from two to one the number of Class C licenses available. Thereafter the State Commission dismissed plaintiffs' appeal as moot on the ground that no license was available.

This action to enjoin the enforcement of the ordinance reducing the number of licenses was then commenced. The defendants, the village and its officers, moved to dismiss the complaint. After some oral argument had been heard upon the motion, the cause was referred to a master in chancery "to take testimony on whether or not the amending of the village ordinance by the village authorities was capricious, arbitrary, and otherwise illegal, and report to the Court his conclusions * * *." The parties acquiesced in this unusual procedure. After plaintiffs had closed their proofs, the master filed his report finding that the ordinance was not capricious, arbitrary or otherwise illegal. The trial court entered a decree dismissing the complaint, and the plaintiffs have appealed.

The Liquor Control Act expressly delegates to municipalities the power to determine "the number, kind and classification of licenses, for sale at retail of alcoholic liquor * * *." (Ill. Rev. Stat. 1961, chap. 43, par. 110.) It also expressly provides that the municipality may decrease the number of licenses to be issued, even where the renewal of a license is involved, rather than, as here, an original application. "Any licensee may renew his license at the expiration thereof, provided he is then qualified to receive a license and the premises for which such renewal license is sought are suitable for such purpose; and provided further that the renewal privilege herein provided for shall not be construed as a vested right which shall in any case prevent the city council or village presi-

dent and board of trustees or county board, as the case may be, from decreasing the number of licenses to be issued within its jurisdiction." Ill. Rev. Stat. 1961, chap. 43, par. 119.

This court has stated that "The right to engage in the liquor traffic is not an inalienable right guarded by the organic law. It is not a right of citizenship nor one of the privileges and immunities of citizens of the United States. It involves no constitutional right which is violated by the mere curtailment or termination of its exercise." *Great Atlantic and Pacific Tea Co.* v. *Mayor of Danville,* 367 Ill. 310, 317; *Hornstein* v. *Illinois Liquor Control Com.* 412 Ill. 365, 370; *Schreiber* v. *Illinois Liquor Control Com.* 12 Ill.2d 118, 121; see also *Tanner* v. *Illinois Liquor Control Com.* 16 Ill.2d 517.

The complaint attacked the ordinance upon a broad front, and at the hearing before the master the members of the village board who enacted the ordinance, as well as the president of the village who was also the local liquor license commissioner, were questioned as to their relationships with, and their financial interest in, other establishments in the village, some of which held liquor licenses. The examination of these witnesses failed to establish any improper relationships, and in this court the plaintiffs challenge the ordinance only upon the ground that it was not demonstrated to have any reasonable relation to the health, safety and welfare of the residents of the village.

The plaintiffs seem to take the position that the burden was upon the village to establish the validity of its ordinance. They point out that there was no written record made as to why the ordinance was prepared and the purposes it was intended to accomplish; that "the views of the constituency" were not solicited, "nor was any survey made to determine how many restaurants were desirable to serve the population of Broadview, nor where they

would be best located from the standpoint of public benefit"; that no witnesses were brought before the village board before the ordinance was passed, and that no public hearings were heard with respect to the ordinance. None of these matters, of course, has anything whatsoever to do with the validity of this kind of an ordinance. Nor did its validity depend upon the reasons given by the village trustees for its enactment. So, for example, it is irrelevant that one of the trustees stated as his reason for reducing the number of licenses from two to one, "I am opposed to a combination liquor and restaurant license." "The motives that may have actuated those in authority are not the subject of judicial investigation." *Deerfield Park Dist.* v. *Development Corp.* 22 Ill.2d 132, 140; *Ligare* v. *City of Chicago,* 139 Ill. 46, 64.

The burden of establishing the invalidity of the ordinance rested upon the plaintiffs, (see *e.g., Petterson* v. *City of Naperville,* 9 Ill.2d 233, 246,) and they failed to discharge that burden. The decree of the superior court of Cook County is affirmed.

*Decree affirmed.*