(No. 42027.—

VIRGINIA MILLER, Appellee, *vs.* ILLINOIS LIQUOR CONTROL
COMMISSION *et al.,* Appellants.

*Opinion filed Nov. 26, 1969.—Rehearing denied Jan. 26, 1970.*

WILLIAM J. SCOTT, Attorney General, of Springfield, (FRANCIS T. CROWE, and HERMAN R. TAVINS, Assistants Attorney General, of counsel,) for appellants.

HALFPENNY, HAHN AND RYAN, and JAMES A. BROWN, both of Chicago, (JAMES F. FLANAGAN and MARY M. SHAW, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Virginia Miller, brought this action in the circuit court of Cook County to enjoin the Illinois Liquor Control Commission from enforcing those provisions of the Liquor Control Act which prohibit the issuance of a State license to the holder of a Federal gaming device stamp (Ill. Rev. Stat. 1967, ch. 43, par. 120, subpars. (16)(17)(18) (19)), and to enjoin the sheriff of Cook County from enforcing the provision of the Criminal Code which requires the holder of a Federal gaming device stamp to register with the county clerk in the county where he resides and where he does business. (Ill. Rev. Stat. 1967, ch. 38, par. 28—4.) The circuit court heard evidence and issued the injunctions as prayed. Constitutional questions are involved, and the defendants have appealed directly to this court.

The plaintiff holds a local retail liquor license issued by the Calumet Park Liquor Control Commission authorizing her to operate a tavern upon premises she has rented in Calumet Park, Illinois. She has also entered into an arrangement by which a coin-operated amusement device, commonly known as a pinball machine, would be placed in her tavern. The arrangement contemplated that she would receive "half of any monies that were in the machine." Sections 4461 and 4462 of the Internal Revenue Code (26 U.S.C.A. secs. 4461, 4462) require any person who permits a coin-operated gaming device to be used on his premises to pay an excise tax and receive a Federal gaming device stamp.

Plaintiff was required by rulings of the Internal Revenue Service interpreting sections 4461 and 4462 to purchase such a stamp for the pinball machine and she did so under protest.

In 1967 the General Assembly amended the Liquor Control Act to prohibit the Commission from issuing a license to anyone to whom a Federal gaming device stamp had been issued for the current tax period. (Ill. Rev. Stat. 1967, ch. 43, par. 120, subpars. (16)(17)(18)(19).) The Commission requires an applicant for a State license to state whether he has a Federal gaming device stamp for the current tax period. The complaint alleged that because the plaintiff must answer that question affirmatively the Commission would be required to refuse to issue a license to her. It also alleged that because pinball machines are legal in Illinois unless prohibited by a municipal ordinance, which Calumet Park does not have, the refusal of a license deprives her of due process of law under the fourteenth amendment to the Federal constitution and sections 1 and 2 of article II of the constitution of Illinois, and that the statute is invalid under sections 1 and 22 of article IV of the constitution of Illinois.

The complaint further alleged, and the trial court held, that the provision of the Criminal Code which requires that any person who has purchased a Federal gaming device tax stamp shall register the stamp in the office of the county clerk in the county in which he resides and in which he conducts any business (Ill. Rev. Stat. 1967, ch. 38, par. 28—4) violates the fifth and fourteenth amendments to the Federal constitution and section 10 of article II of the constitution of Illinois.

We consider first the statute which prohibits the issuance of a liquor license to one who holds a Federal gaming device stamp. Like other courts, this court has often held that because of its nature the right to engage in the liquor trade is not an inherent one, but is subject to regulation by the State in the exercise of its police power. (*Oak Park Nat. Bank* v. *Village of Broadview* (1963), 27 Ill.2d 151, 154; *Schreiber*

v. *Illinois Liquor Control Com.* (1957), 12 Ill.2d 118, 121; *Hornstein* v. *Illinois Liquor Control Com.* (1952), 412 Ill. 365, 369.) It is axiomatic that the legislative judgment as to what the public welfare requires is not open to judicial dispute so long as that judgment is not exercised in such an arbitrary, oppressive and unreasonable manner as to constitute a deprivation of due process of law. The legislature's discretion is broad, and its determinations may not be overturned because a court may think them unwise or inappropriate. See *People ex rel. Baker* v. *Strautz* (1944), 386 Ill. 360, 364—5; *South Carolina State Highway Dept.* v. *Barnwell Bros., Inc.,* (1938), 303 U.S. 177, 191, 82 L. Ed. 734, 743, 58 S. Ct. 510.

The plaintiff argues that the statute creates an irrebuttable presumption that a prospective licensee, to whom a Federal stamp has been issued, has in fact indulged in illegal gambling. And because pinball machines are not illegal in Illinois, she argues, this presumption is arbitrary and unreasonable. If this was the premise underlying the statute, the plaintiff would be correct in her assertion. But the statute makes no such judgment. Its underlying premise is not that possession of a stamp necessarily implies that gambling exists or has existed, but rather that those devices for which such a stamp is required are particularly susceptible to being used for gambling.

This prohibition against owning both a liquor license and a gaming stamp is prophylactic in nature; it looks not to past or present actions, but only to the avoidance of opportunity for future transgression. The legislature has decided that gambling and liquor in combination is an evil to be avoided. It has sought to implement that decision by preventing those situations which lend themselves to such abuse from arising. Unless it can be said that the legislative prohibition has no rational tendency to minimize the likelihood of gambling on premises licensed for the sale of liquor, the legislative determination must be sustained.

Section 4461 of the Internal Revenue Code (26 U.S.C. 4461) imposes a tax upon "every person who * * * permits the use of, on any place or premises occupied by him, a coin-operated gaming device * * *." Section 4462 (26 U.S.C. 4462) defines "coin-operated gaming device" to exclude "a bona fide vending or amusement machine in which gaming features are not incorporated * * *." Thus, by definition, it is only those devices which have built-in features suitable for gambling that are subject to the Federal tax. The Federal statute does not impose a tax on illegal gambling devices; it is concerned only with machines that have features which peculiarly afford the opportunity to gamble. (See *Marchetti* v. *United States* (1968), 390 U.S. 39, 19 L. Ed. 2d 889, 88 S. Ct. 697; *United States* v. *Nine Gambling Devices* (S.D. Ill. 1957), 59-2 USTC, par. 15,257; *United States* v. *Korpan* (1957), 354 U.S. 271, 1 L. Ed. 2d 1337, 77 S. Ct. 1099.) The general legality of the device under Illinois law is therefore irrelevant; the question is whether the legislature lacks the power to prohibit a device with built-in gambling features in an establishment licensed for the sale of liquor. That question must be answered in the negative.

The plaintiff relies heavily on *Shoot* v. *Illinois Liquor Control Com.* (1964), 30 Ill.2d 570. There it was held that a rule of the Illinois Liquor Commission which made possession of a Federal gaming device stamp a ground for the suspension or revocation of a liquor license was arbitrary and unreasonable. The rule was regarded as asserting that the purchase of a stamp was "presumptive evidence of gambling." We are unwilling to believe that the General Assembly, which adopted the statute under attack in the face of the decision of this court in *Shoot,* deliberately intended to reassert the presumption there held invalid. On the contrary, we are of the opinion that the General Assembly intended rather to exercise its authority to safeguard against the existence of ready occasions for gambling. To the extent

that the *Shoot* case is contrary to our present holding, that case is overruled.

We now turn to the statute which requires the holder of a Federal gaming device stamp to register with the county clerk. (Ill. Rev. Stat. 1967, ch. 38, par. 28—4.) In *Marchetti* v. *United States* (1968), 390 U.S. 39, 19 L. Ed. 2d 889, 88 S. Ct. 697, the Supreme Court held that the defendant could not be prosecuted for failure to pay the Federal wagering occupational tax or for failure to obtain a Federal wagering occupational stamp as required by sections 4411 and 4412 of the Internal Revenue Code. (26 U.S.C. 4411, 4412.) Marchetti's activities were illegal in Connecticut where he conducted them. Because the information he was required to supply in order to obtain a wagering occupational stamp was made available to Connecticut law enforcement authorities, the court concluded that compliance with sections 4411 and 4412 would have confronted him with "substantial hazards of self-incrimination." See also, *Grosso* v. *United States* (1968), 390 U.S. 62, 19 L. Ed. 2d 906, 88 S. Ct. 709; *Haynes* v. *United States* (1968), 390 U.S. 85, 19 L. Ed. 2d 923, 88 S. Ct. 722.

The Supreme Court in *Marchetti* stated that the privilege against self-incrimination has been applied in those situations where the claimant is "confronted by substantial and 'real', and not merely trifling or imaginary, hazards of incrimination." (390 U.S. at 53, 19 L. Ed. 2d at 901.) The court also stated, however, that if the claimant is not so confronted, he is not relieved from complying with the statute. (390 U.S. at 61, 19 L. Ed. 2d at 905.) We think that compliance with section 28—4 does not confront the plaintiff with substantial hazards of self-incrimination.

There is a fundamental difference between the danger which the plaintiff confronts, and that which confronted Marchetti. The underlying activities for which Marchetti was required to purchase a Federal wagering occupational stamp were illegal in Connecticut. There was no legal ac-

tivity for which he would have needed to obtain such a stamp. By complying with the tax statutes, therefore, he would have been put in the position of having to state publicly that he was then planning to engage in illegal activities. The plaintiff, on the other hand, faced no such danger in complying with section 28—4. The underlying activity for which she was required to register is not illegal in Illinois. She does not, therefore, confront any immediate hazard of self-incrimination by the mere act of registering the stamp. Although she may, in the future, decide to use her machine for illegal gambling, that is just a possibility at the moment. Although we have here held that that possibility is adequate to uphold a legislative decision to bar the holder of a stamp from obtaining a liquor license, we think it is too contingent to confront the holder with a "substantial hazard of self-incrimination."

The judgment of the circuit court is reversed.

*Judgment reversed.*