(No. 42698.— )

RICHARD J. DALEY, Mayor and Liquor Control Commissioner, Appellee, *vs.* FRANK BERZANSKIS, Appellant.

*Opinion filed January 25, 1971.*

GOLDENHERSH, J., dissenting.

WARREN D. WOLFSON and PATRICK S. FILTER, JR., both of Chicago, for appellant.

RICHARD L. CURRY, Corporation Counsel, of Chicago, (MARVIN E. ASPEN and EDWARD KRASNOVE, Assistant Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

After a hearing before the local liquor control commissioner the liquor license of defendant, Frank Berzanskis, was revoked. The basis for the finding was testimony concerning property which had been seized on defendant's premises by Cook County sheriff's police. The evidence was admitted over defendant's objection that the search and seizure violated his rights under the fourth and fourteenth amendments of the Federal constitution. On defendant's appeal the license appeal commission of the city of Chicago reversed the order of the commissioner who then brought proceedings in the circuit court of Cook County under the Administrative Review Act. (Ill. Rev. Stat. 1963, ch. 110, pars. 264-279.) The court reversed the order of the appeal commission and affirmed the order of the commissioner. Defendant has appealed directly to this court because the case involves questions arising under the Federal constitution.

On August 4, 1966, defendant was operating a tavern in the city of Chicago under a license issued by the local liquor control commissioner. In addition to the tavern, the building

also housed a grocery store, defendant's five-room living quarters and a basement. There was a front entrance leading to the tavern, a side entrance leading to the grocery and a back entrance leading to one of the bedrooms. The basement had in it a bar room and a laundry room with access by way of a stairway at the end of the upstairs bar. A door at the top of the stairway was kept open at all times. The basement was used by defendant for storage of empty containers in connection with the operation of the upstairs tavern.

On the date indicated two officers of the Cook County sheriff's police armed with a search warrant proceeded to the premises in question and searched defendant's living quarters and the basement where numerous items of stolen property were found and seized. Defendant was then arrested and charged with the offense of receiving stolen property. At a hearing on September 21, 1966, the search warrant was quashed and the evidence seized ordered suppressed in the criminal case. The defendant was then discharged and no appeal was taken by the State from the order quashing the warrant. Subsequent to the ruling, a complaint was filed to revoke defendant's liquor license. The only issue before this court is whether the suppressed evidence was admissible before the liquor control commissioner.

Appellant contends that the search was a violation of his fourth amendment right to privacy and therefore the evidence seized should be excluded from all proceedings. There are two questions involved: whether the search was authorized by statute and whether authorization for a warrantless search would be a violation of the fourth amendment.

We consider first whether authorization for a warrantless search is constitutional. "Like other courts, this court has often held that because of its nature the right to engage in the liquor trade is not an inherent one, but is subject to regulation by the State in the exercise of its police power.

(*Oak Park Nat. Bank* v. *Village of Broadview* (1963), 27 Ill.2d 151, 154; *Schreiber* v. *Liquor Control Com.* (1957), 12 Ill.2d 118, 121; *Hornstein* v. *Liquor Control Com.* (1952), 412 Ill. 365, 369." (*Miller* v. *Liquor Control Com.* 44 Ill.2d 155, 157-158.) The court, in *People ex rel. Fitzgerald* v. *Harrison,* 256 Ill. 102, noted: "The business of selling liquor is attended with danger to the community and is a recognized subject for regulation by the police power of the State. There is no inherent right to carry it on and it may be entirely prohibited. The manner and extent of its regulation, if permitted to be carried on at all, are to be determined by the State, so as to limit, as far as possible, the evils arising from it." (256 Ill. at 106.) Because the business of selling liquor is closely related to certain evils in society, it is subject to any regulation which has any substantial relation to the public health, comfort, safety or welfare. "It is axiomatic that the legislative judgment as to what the public welfare requires is not open to judicial dispute so long as that judgment is not exercised in such an arbitrary, oppressive and unreasonable manner as to constitute a deprivation of due process of law. The legislature's discretion is broad, and its determinations may not be overturned because a court may think them unwise or inappropriate." (44 Ill.2d at 158.) Considering the nature of the business we do not believe that a close scrutiny of the operation of the business through warrantless searches is unreasonable or arbitrary.

In *Solomon* v. *Liquor Control Commission* (1965), 4 Ohio St. 2d 31, 212 N.E.2d 595, *cert.* denied (1966), 384 U. S.928, 16 L. Ed. 2d 531, the Ohio Supreme Court upheld the revocation of a liquor license based on the finding that certain bottles seized in a warrantless search were diluted. Defendant there, as here, argued that the evidence was illegally obtained and should be inadmissible under the exclusionary rule of *Mapp* v. *Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684. Section 4301.10 of the Revised Code

of Ohio, permits a warrantless inspection of the place of business of any permit holder. The Ohio court found that the search and confiscation of the bottles were valid under section 4301.10, stating: "Our conclusion is that the appropriation of appellee's bottles of whiskey and the analysis of their contents were authorized under the Liquor Control Act, and that by applying for and accepting a permit to sell intoxicating beverages appellee made herself amenable to the provisions of that law and thereby consented to the inspection of the premises, and the appropriation for analysis of any intoxicating liquor suspected to be in violation of the liquor control laws * * *. It follows that such bottles of whiskey were properly admitted in evidence at the hearing before the Liquor Control Commission.

"Because of the position taken, it becomes unnecessary to consider and discuss the question of whether the exclusionary rule announced by the Supreme Court of the United States in the criminal case of *Mapp* v. *Ohio, supra,* and kindred cases is applicable to hearings before a public administrative agency like the Liquor Control Commission in instances where only the suspension or revocation of a liquor permit is involved." 4 Ohio St. at 34, 36.

We agree with the Ohio court that one who applies for and is issued a permit to sell alcoholic beverages thereby assents to the reasonable and lawful conditions imposed by statute and rule and find that due to the potentiality of criminal activity in the liquor business there is no constitutional objection to requiring consent to a warrantless search as a prerequisite to the issuance of a liquor license. The State of Illinois could completely prohibit the sale of liquor, but having instead chosen to regulate it, any restriction or requirement such as consent to a warrantless search, which is necessary to protect public health, safety and morals, is a reasonable exercise of the police power of the State. For similar result, see: *State Liquor Comm.* v. *Lucien Gilbert* (Me. 1970), 270 A. 2d 876; *Manchester Press Club* v.

*State Liquor Comm.*, 89 N.H. 442, 200 A. 407; *contra: Finn's Liquor Shop, Inc.* v. *State Liquor Authority*, 24 N.Y.2d 647, 249 N.E.2d 440.

We next consider the question whether the Liquor Control Act (Ill. Rev. Stat. 1969, ch. 43, par. 94 *et seq.*) is applicable to the facts of this case. The search was conducted with an apparently invalid warrant by the sheriff's police for the purpose of criminal prosecution. Section 3 of article IV of the Act (Ill. Rev. Stat. 1969, ch. 43, par. 112) provides that each local commissioner has the power to enter or to authorize the entry of a law enforcement officer upon any licensed premises at any time, while section 8 of article X sets forth the procedure for issuance of a search warrant for nonlicensed premises but further provides that "no search warrant shall be necessary for the inspection or search of any premises licensed under this Act." (Ill. Rev. Stat. 1969, chap. 43, par. 190.) Section 5 of Rule 3 of Article III of the Illinois Liquor Control Commission provides: "Proof before this Commission of facts which establish a violation of any state statute, city, village, town or county ordinance or resolution or rule of this Commission, shall be sufficient cause for revocation or suspension of any license issued by the Commission, irrespective of whether or not a conviction has been obtained in any Court." When these provisions and the rule are considered together, it is apparent that section 8 of article X was intended to do more than repeat the authority expressed in section 3 of article IV. From a reading of these provisions it necessarily follows that for the limited purposes of a license revocation hearing evidence of a crime will not be suppressed for lack of a valid search warrant. Clearly, however, this has no application outside of the area of liquor control.

Stolen property, consisting of approximately one thousand individual items including cameras, radios, office equipment, mink coats, guns, jewelry and small appliances, was

found in defendant's living quarters and in the basement below the tavern. There is support in the record for the commissioner's conclusion that, due to the control of the basement and the accessibility to it from the tavern, the basement was considered part of the licensed premises. Testimony concerning evidence seized in the basement, to-wit: two television sets, a phonograph and a portable electric typewriter, was admitted before the commissioner and this is sufficient to sustain the revocation.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent from the majority opinion and would reverse the judgment. The basis for my objection to the court's holding is well stated in the concurring opinion of Mr. Justice Douglas in *Thorpe* v. *Housing Authority of the City of Durham*, 386 U.S. 670, 678-9, 18 L. Ed. 2d 394, 87 S. Ct. 1244:

"The recipient of a government benefit, be it a tax exemption (*Speiser* v. *Randall*, 357 U.S. 513), unemployment compensation (*Sherbert* v. *Verner*, 374 U.S. 398), public employment (*Slochower* v. *Board of Education*, 350 U.S. 551), a license to practice law (*Spevack* v. *Klein*, 385 U.S. 511), or a home in a public housing project cannot be made to forfeit the benefit because he exercises a constitutional right. In *United States* v. *Chicago, M., St. P. & P. R. Co.*, 282 U.S. 311, 328-329, the Court said that 'the right to continue the exercise of a privilege granted by the state cannot be made to depend upon the grantee's submission to a condition prescribed by the state which is hostile to the provisions of the federal Constitution.' This was in the tradition of *Frost Trucking Co.* v. *Railroad Comm'n*, 271 U.S. 583, 594, where the Court emphasized that 'if the state

may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence.' "