JAMAICA INN, INC., d/b/a 6 EAST CLUB, *et al.*, Plaintiffs-Appellants, *v.* RICHARD J. DALEY *et al.*, Defendants-Appellees.

(No. 60814;

First District (1st Division)—June 2, 1975.

Julius Lucius Echeles and Carolyn Jaffe, both of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert R. Retke, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

A group of plaintiffs brought suit against the mayor of the city of Chicago and various city officials (defendants); seeking a declaratory judgment that a certain city ordinance was unconstitutional and also injunctional relief. Defendants filed a motion to dismiss the complaint supported by suggestions. After hearing argument of counsel and upon consideration of legal matters, the court found the ordinance to be valid under the constitutions of the State of Illinois and of the United States. Defendants' motion was accordingly granted and the suit dismissed. Plaintiffs appeal.

■■ Since the case was disposed of on the motion to dismiss without hearing evidence, the well-pleaded allegations in the plaintiffs' complaint are deemed admitted and constitute the pertinent facts. (*Holiday Magic, Inc. v. Scott,* 4 Ill.App.3d 962, 282 N.E.2d 452.) However, conclusions need not be accepted. (*Chicago Teachers Union v. Board of Education,* 14 Ill.App.3d 154, 156, 301 N.E.2d 833.) The complaint alleged some 13 various individuals doing business under designated names are licensees of the City for sale of alcoholic beverages by the drink at retail. All of them are designated as plaintiffs together with seven additional individuals who are described as employees in the licensed establishments such as bartenders, waitresses or dancers. One plaintiff is an individual who is described as a regular and frequent patron of one of the licensees. The defendants are the mayor of the city of Chicago, who is the local liquor license commissioner of the City, the superintendent of police for the City and the corporation counsel.

The complaint also alleges that an integral part of the business of those plaintiffs who are licensees revolves about a convivial social atmosphere including socializing between patrons and employees and buying drinks for one another. The ordinance in question is described as prohibiting licensees and their employees from asking patrons to purchase alcoholic or nonalcoholic beverages for any employee, except when the patron and employee are related by blood or marriage. A copy of the ordinance is appended to the complaint. The complaint then sets forth a number of reasons for unconstitutionality of the ordinance: it improperly restricts a licensee, their employees and patrons, from exercising first amendment freedom of expression and association; threatens to deprive licensees and their employees of property without due process; exempts without reason activities wherein patron and employee are re-

lated by blood or marriage; imposes an impossible burden upon licensees and their employees to screen all drinks served and to check on blood or marital relationships; unconstitutionally prohibits friendly and social mutual purchasing of drinks; and exceeds the City's legitimate police power.

The complaint also alleges that the ordinance is unconstitutional because it has been utilized only to arrest in situations where female employees request and receive drinks so that it is applied in a sexually discriminatory manner. The complaint sets forth the fact that a predecessor ordinance [sic] was held unconstitutional by the United States District Court as being sexually discriminatory. Prior to this holding, defendants had made numerous arrests and had instituted proceedings to revoke liquor licenses because of such alleged violations. From this decision of unconstitutionality to the enactment of the new ordinance, drink solicitation was not prohibited and no ill consequences resulted. Subsequent to passage of the new ordinance, a number of employees of one of the licensees had been arrested for violation thereof and plaintiffs believe that defendants will continue vigorous enforcement of the new ordinance.

Plaintiffs further allege that they will suffer irreparable harm from such enforcement such as economic harm and damage to their first amendment freedoms; threats and actuality of arrest and possible conviction of licensees and employees; threat of revocation of liquor licenses and consequent loss of jobs to employees; disruption of business of the licensees to the alarm and possible loss of patrons; preventing those plaintiffs who are dancers from exercising first amendment freedoms and preventing the licensees from retaining their employees who will take similar jobs in other cities not having such ordinances. The complaint also contains various allegations regarding the inadequacy of plaintiffs' remedy at law together with a prayer for relief.

The ordinance involved is the Municipal Code of Chicago (ch. 147, §§ 147-15, 15.1 and 15.2). Its provisions are:

"147-15. For the purpose of this Section, the following terms shall have the meaning ascribed to them in this subsection:

A. Employee. The term 'Employee' means any agent, manager, employee, entertainer, barkeeper, host, hostess, waiter, waitress or other such person employed on any contractual basis by such an establishment, or receiving any remuneration for services in such an establishment;

B. Licensed Establishment. The term 'Licensed Establishment' means any place of business which has been issued a city license for the retail sale of alcoholic beverages;

C. Patron. The term 'Patron' means any patron, customer, or visitor of a licensed establishment who is not employed by such establishment.

147—15.1. No licensee or any employee of a licensee shall:

(a) Solicit, induce or request any patron of the licensed establishment to purchase any alcoholic or non-alcoholic beverage for himself or any other employee of the licensed establishment; or

(b) Knowingly serve to any employee any alcoholic or non-alcoholic beverage which was purchased by any patron.

147—15.2. No licensee, manager or barkeeper of a licensed establishment shall permit any employee to remain on the premises of the licensed establishment who solicits, induces or requests a patron to purchase an alcoholic or non-alcoholic beverage for any employee.

Nothing in this Section prohibits the above activities where the patron and employee are related by blood or marriage."

In the briefs before us, plaintiffs divide their argument into two general subdivisions: unconstitutionality of the ordinance and the error of the court in refusing to enjoin defendants from enforcement of the ordinance. In the first portion of the argument, plaintiffs contend that the ordinance abridges three basic rights under the Constitution of the United States: first amendment rights of freedom of expression and association; fifth and fourteenth amendment rights to due process of law and a denial of equal protection of the laws. Plaintiffs then argue that remedy by injunction is necessary and proper.

In opposition, defendants first advance the general principle that the ordinance is valid as a rational exercise of the broad authority of the State under the twenty-first amendment to control activities connected with sale of alcoholic beverages. Defendants complete their argument with three contentions: no first amendment rights of freedom of expression or association are involved in the case; the ordinance does not deprive plaintiffs of due process of law and it does not deny plaintiffs equal protection of the laws.

Two preliminary matters require initial attention. A previous attempt was made by the legislature of Illinois to prohibit solicitation of drinks in establishments selling liquor at retail. The statute prohibited solicitation of drinks by female employees and service of drinks purchased by male patrons for female employees of the licensed premises. (Ill. Rev. Stat. 1971, ch. 38, pars. 26.1—2(a), 26.1—3(c).) This statute likewise exempted male patrons related to the employee by blood or marriage. In *Daugherty v. Daley* (N.D. Ill. 1974), 370 F. Supp. 338, the court held that restriction of this enactment to female employees contravened

fourteenth amendment rights to equal proection under the laws. The court pointed out that the enactment discriminated in favor of male employees and against females. The ordinance involved in the case before us was passed after the *Daugherty* decision which was filed February 5, 1974. Apparently this ordinance is an attempt by the City to remedy the defect in the statute and to supply valid regulations covering the same field.

Secondly, it must be considered and remembered that there is a general presumption of validity of municipal enactments. "It is axiomatic that an ordinance passed in pursuance of competent statutory authority is presumptively valid." (*Henson v. City of Chicago*, 415 Ill. 564, 570, 114 N.E.2d 778.) See also *La Salle National Bank v. City of Evanston*, 57 Ill.2d 415, 428, 312 N.E.2d 625.

The first point raised by plaintiffs pertains to deprivation of first amendment rights of freedom of speech and expression as well as freedom of association. The argument is made that the ordinance prohibits persons who work in taverns from expressing their desires by requesting patrons to buy drinks for them and that the ordinance thus "prevents employees and patrons from associating with one another in a convivial atmosphere." Plaintiffs cite and depend strongly upon *Breen v. Kahl* (7th Cir. 1969), 419 F.2d 1034, *cert. denied*, 398 U.S. 937, and *United States v. Dellapia* (2nd Cir. 1970), 433 F.2d 1252. *Breen* is concerned with the right of a student to wear long hair and the validity of a school regulation in this regard. The court held that a matter of personal freedom was involved thus placing upon the State a "substantial burden of justification." (419 F.2d 1034, 1036.) No question of police power was presented or decided. *Dellapia* dealt with mailing obscene materials at the request of the addressee. These facts are radically different from problems arising from the use of intoxicating liquor. The court described this situation, involving dissemination of printed material, as a private matter between the parties where "the communication does not harm others * * *." (433 F.2d 1252, 1258.) No issue was decided regarding regulatory use of police power in the public interest.

The lack of validity of these arguments by plaintiffs is illustrated by a number of decisions of the United States Supreme Court. The basic and necessary purpose of the first amendment is to keep open channels for communication of ideas among people. *Roth v. United States*, 354 U.S. 476, 1 L.Ed.2d 1498, 77 S.Ct. 1304, describes the right of free speech as related to "unfettered interchange of ideas for the bringing about of political and social changes * * *." (354 U.S. 476, 484.) It would pervert logic to classify solicitation of drinks by tavern employees from patrons as being within constitutional protection on the theory that this

constitutes actual, socially useful communication. The activity which plaintiffs seek to foster and protect in this litigation, does not appear to have any relationship to the salutary concept thus advanced in *Roth*.

■■ Another factor of prime importance arises in the case before us because of the background of this type of drink solicitation. Despite the argument of plaintiffs that no demonstrable "evils" would result in the absence of the ordinance in question, it is a matter of common knowledge that solicitation of intoxicating drinks is generally associated with conduct of various types in which the exercise of the police power is vitally essential for protection of the public welfare. Quite apart from and in addition to sexual problems, the existence of which plaintiffs apparently concede, there remains as a vital and proper concern of regulatory government an effort to achieve a degree of moderation in the use of intoxicants. The type of regulation here involved is quite analogous to fixing hours of sale or forbidding sales of intoxicating liquors to minors. This factor is clearly expressed in *California v. La Rue*, 409 U.S. 109, 34 L.Ed.2d 342, 93 S.Ct. 390, where the court approved a regulation which prohibited explicitly sexual live entertainment and films in places where alcoholic drinks were sold. As *La Rue* points out, a regulation such as the one at bar represents simply the choice by government "of a prophylactic solution" instead of depending upon "self-discipline on the part of the customer or self-regulation on the part of the bartender  *  *  *." 409 U.S. 109, 116.

■■ It must also be recognized that plaintiffs' rights to free speech and association are not infringed by this ordinance except for the one narrow restriction that these rights may not be exercised in a very limited manner in plaintiffs' respective places of employment. They may exercise their right to free speech and free association within their places of employment in any other manner and concerning any other subject than this most narrow restriction imposed by the ordinance. Similarly, they have complete and unhampered rights of free speech and association at any other place outside of their place of employment.

In *La Rue,* the court pointed out that while some portions of the banned performances might be "within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink." (409 U.S. 109, 118.) Similarly, *La Rue* compared the restriction placed upon the entertainment there involved not as constituting complete prohibition thereof but as amounting simply to proper control of the distribution of liquor under the twenty-first amendment and not as an interference with first amendment activities. (409 U.S. 109,

119, 120.) The same reasoning is applicable to the case at bar. We conclude that the ordinance before us does not violate first amendment rights of free speech or association.

Plaintiffs next contend that the ordinance infringes upon their rights under the fifth and fourteenth amendments so as to deprive them of due process of law. This argument is based upon two rather divergent contentions. First, that plaintiffs "are not permitted to carry out the exercise of their business as they see fit"; and, second, that the exemption provisions of the ordinance suspending its action where the patron and the employee "are related by blood or marriage" are so vague as to deprive plaintiffs of due process of law.

As regards the first of these contentions, no legal authority is cited by plaintiffs. This ordinance rests upon an exercise of police power especially fortified because the police power in turn rests upon broad authority conferred "under the Twenty-first Amendment to specify the times, places, and circumstances where liquor may be dispensed * * *." (*California v. La Rue*, 409 U.S. 109, 119.) The validity of the exercise of the police power here involved must be considered in the light of repeated holdings by the courts of Illinois fixing the status of the sale of intoxicating liquor as being legitimate only when it is carried on within the conditions prescribed by the legislature in permitting such sales. The sale of alcoholic liquor at retail is particularly subject to legislative regulation. The reason for this is manifest. The use of alcoholic beverages provides us with a complete paradox. Alcohol has produced many social and even medicinal benefits. Simultaneously, the use of alcohol now presents the greatest existing American narcotic problem. This situation has long been the subject of repeated attention by authoritative courts of review. In *Miller v. Liquor Control Com.*, 44 Ill.2d 155, 157, 254 N.E.2d 502, the supreme court stated:

> "Like other courts, this court has often held that because of its nature the right to engage in the liquor trade is not an inherent one, but is subject to regulation by the State in the exercise of its police power."

The same principle is well illustrated in *Cheetah Enterprises, Inc. v. County of Lake*, 22 Ill.App.3d 306, 311, 317 N.E.2d 129, where the court stated:

> "The nature of dramshop [*sic*] operations requires them to be regulated and restricted more rather than less than the general public or other commercial enterprises."

As already noted, in *California v. La Rue*, 409 U.S. 109, 34 L.Ed.2d 342, 93 S.Ct. 390, the United States Supreme Court pointed out that "the broad sweep of the Twenty-first Amendment has been recognized

as conferring something more than the normal state authority over public health, welfare, and morals." 409 U.S. 109, 114.

■■ Another important authority in this regard is *Gibbons v. Cannaven*, 393 Ill. 376, 66 N.E.2d 370. The Supreme Court of Illinois there pointed out (393 Ill. 376, 383):

> "In the exercise of the police power, the legislature may enact laws for the purpose of protecting the health, morals and safety of the people, either by prohibiting traffic in intoxicating liquors or licensing it, or permitting it under any conditions which, in their judgment, they may approve."

It is most interesting to note in *Gibbons* the citation of older cases decided by the United States Supreme Court. One of these authorities describes "the appalling statistics of misery, pauperism and crime which have their origin in the use or abuse of ardent spirits." (*Thurlow v. Massachusetts*, 46 U.S. 504.) The following language from the same source is also worthy of note (see *Gibbons*, 393 Ill. 376, 386-87):

> " '* * * The police power, which is exclusively in the States, is alone competent to the correction of this great evil, and all measures of restraint or prohibition necessary to effect this purpose are within the scope of that authority.' "

See also *Daley v. Berzanskis*, 47 Ill.2d 395, 397, 398, 269 N.E.2d 716, and other cases there cited.

Plaintiffs attempt to rest their due process argument upon the existence of other legislation which deals in a general way with the elimination of sexual misconduct. However, as shown, that area is, to our minds, only one of the evils which the ordinance seeks to correct. Other pernicious consequences of the conduct proscribed by the ordinance result from encouragement of intoxication by inducing customers to drink more than they otherwise would. Careful reading of *Daugherty v. Daley* (N.D. Ill. 1974), 370 F. Supp. 338, shows that when the court invalidated the statute of Illinois directed against drink solicitation, it narrowed the reason for its action to rest only upon the element of lack of equal protection because the statute was directed only against solicitation of drinks by women and not by men. The court carefully limited the area of its decision to the equal protection clause and avoided deciding other issues by the use of this language (370 F. Supp. 338, 340):

> "We do not have here the question of the authority of the State to impose reasonable controls upon employee solicitations or the inducing of patrons to buy drinks or even to ban solicitation entirely."

For these vital reasons, the courts of Illinois have held that "a license to sell alcoholic beverages at retail is not a right but a privilege, and

as such it is not subject to the protection of due process under the constitution." *Malito v. Marcin,* 14 Ill.App.3d 658, 662, 303 N.E.2d 262, *leave to appeal denied* 55 Ill.2d 602, *appeal dismissed,* 417 U.S. 963, 41 L. Ed.2d 1135, 94 S.Ct. 3165. See also *Hornstein v. Liquor Control Com.,* 412 Ill. 365, 106 N.E.2d 354, and *People v. Smith,* 368 Ill. 328, 14 N.E.2d 82.

As regards the balance of plaintiffs' due process argument, it is directed to alleged vagueness of the ordinance. However, plaintiffs restrict this argument to the exemption provision at the very end of the enactment. This contention is not raised concerning any other portion of the ordinance. The language of the exemption provision is:

> "Nothing in this Section prohibits the above activities where the patron and employee are related by blood or marriage."

■■ The requirement of fair and reasonable notice to all persons affected by the operation of any legislative enactment, so that they will be informed of the acts intended to be proscribed, is universally accepted. For example, see *United States v. Harriss,* 347 U.S. 612, 98 L.Ed. 989, 74 S.Ct. 808, and *Bouie v. City of Columbia,* 378 U.S. 347, 12 L.Ed.2d 894, 84 S.Ct. 1697, both cited by plaintiffs.

This constitutional requirement, however, should not be construed as placing upon the legislative draftsmen an impossible burden of specificity which human language can never attain. In *People v. Ridens,* 59 Ill.2d 362, 321 N.E.2d 264, the court sustained the obscenity statute of Illinois against attack upon the ground of vagueness. The court quoted the United States Supreme Court: "'Condemned to the use of words, we can never expect mathematical certainty from our language.' * * *" 59 Ill.2d 362, 371, quoting from *Grayned v. City of Rockford,* 408 U.S. 104, 110, 33 L.Ed.2d 222, 92 S.Ct. 2294.

■■ Viewed with this concept, we find no lack of specificity in the ordinance itself and no such defect in the exemption clause. The language used in the exemption is simple and clear in referring to blood or marriage. Both of these words are readily understandable to the average person. Both are found in the dictionary and both are currently used in every day conversation. The meaning of the exemption using the phrase "related by blood or marriage" should be eminently clear to all persons.

Plaintiffs urge the contrary by reference to Rule 66 of the Supreme Court dealing with disqualification of judges. (Ill. Rev. Stat. 1973, ch. 110A, par. 67.) The rule does explain specific circumstances under which disqualification of a judge is required. However, this was necessary in drafting the rule because it was not intended to require disqualification in all cases in which any relative of a judge by blood or marriage has a substantial interest. The rule requires disqualification only in the case of

"a close relative by blood or marriage." It was only the use of the limiting adjective "close" which made it necessary for the drafters of the rule to add explanations. No elaboration of any kind would be necessary if the rule required disqualification of a judge from any case in which any relative by blood or marriage was substantially interested. The exemption clause in this ordinance is thus not comparable to the rule pertaining to judges.

■■ This attack upon the exemption clause must fail for another reason. There is no showing in this record that the exemption portion of the ordinance is operative in any manner in which any of plaintiffs in this case have any interest. Plaintiffs' complaint alleges that certain employees of one of the plaintiffs have been arrested and charged with violation of the ordinance. There is no allegation in the complaint that any of these plaintiffs have raised, or intend to raise, the issue of exemption from the ordinance. No such issue is raised in the complaint. It thus appears that none of the plaintiffs has any legal or factual connection with the exemption. Since this portion of the ordinance does not in any manner affect plaintiffs or their rights, they are not entitled to injunctional or other relief upon this basis. *People v. Bombacino*, 51 Ill.2d 17, 19, 20, 280 N.E.2d 697; *Klein v. Department of Registration*, 412 Ill. 75, 87, 88, 105 N.E.2d 758, *cert. denied*, 344 U.S. 855.

■■ In an attempt to circumvent the operation of this legal principle, plaintiffs bring into this portion of their argument the issue of overbreadth. This contention centers about two cases cited by plaintiffs. In *Aptheker v. Secretary of State*, 378 U. S. 500, 12 L.Ed.2d 992, 84 S.Ct. 1659, the Supreme Court invalidated a statute making it unlawful for a member of a registered communist organization to apply for, use or attempt to use an American passport. The Court held the law overbroad as a violation of fifth amendment rights. In *NAACP v. Button*, 371 U. S. 415, 9 L.Ed.2d 405, 83 S.Ct. 328, the Supreme Court invalidated a statute broadening the definition of solicitation of legal business to include the activities of persons or organizations not parties to the judicial proceedings involved. This invalidity was based upon violation of first and fourteenth amendment rights. These cases point out that where a statute is overbroad the Court will consider its possible applications "in other factual contexts besides that at bar." See 378 U. S. 500, 516.

In the case before us, even considered in any other regulational context, the ordinance itself is not subject to the criticism of being overbroad. This springs from the fact that plaintiffs have limited this phase of the argument to the exemption provision. This is particularly true because the exemption itself presents not a statutory proscription but ameliorating language which gives any person affected by operation of the law an op-

portunity to assert a factual defense. Thus, even if the exemption were to be deemed overbroad, it would invade no rights and raise no problems because its only possible effect would be to expand the opportunities of any alleged violator to assert a successful defense. It follows that plaintiffs' attack upon the ordinance on due process grounds must fail.

■■ We come finally to issues raised by plaintiffs regarding equal protection of the law. This problem is primarily one of legislative classification. For example, in *Levy v. Louisiana*, 391 U.S. 68, 20 L.Ed.2d 436, 88 S.Ct. 1509, the Court invalidated a State statute granting a cause of action for wrongful death in which the trial court held that the word "child" meant only "legitimate child". The gist of the decision and of the concept of equal protection was stated by the Court in one short paragraph (391 U.S. 68, 71):

> "While a State has broad power when it comes to making classifications (*Ferguson v. Skrupa*, 372 U.S. 726, 732), it may not draw a line which constitutes an invidious discrimination against a particular class. See *Skinner v. Oklahoma*, 316 U.S. 535, 541-542. Though the test has been variously stated, the end result is whether the line drawn is a rational one. See *Morey v. Doud*, 354 U.S. 457, 465-466."

The principle has been stated in different words to the effect that there is no lack of equal protection because perfection has not been attained in creation of the class. Even though there may be some inequality, the classification will be approved if it has some "reasonable basis" or "if any state of facts reasonably may be conceived to justify it." See *Dandridge v. Williams*, 397 U.S. 471, 485, 25 L.Ed.2d 491, 90 S.Ct. 1153.

Compliance with this principle was the problem created by the statute which preceded the ordinance before us. In *Daugherty v. Daley* (N.D. Ill. 1974), 370 F.Supp. 338, the court pointed out that there was no reason to prohibit solicitation of drinks by female employees while permitting this same practice to continue as regards male employees. In other words, the classification established by the predecessor statute was not a rational one. The ordinance here has eliminated this problem by removing entirely the classification based on sex and by prohibiting solicitation of the purchase of drinks by any employee of a liquor licensee.

■■ Here also plaintiffs turn their attention to the exemption clause. They urge that since employees and patrons who are related by blood or marriage are free from the restriction, all remaining employees and patrons outside of these designated areas of relationship are subjected to wrongful discrimination. This argument overlooks the point that fourteenth amendment rights of equal protection under the laws do not require a precisely perfect classification. As above shown, the law requires

merely that the end result of any classification must be rational. There is a strong basis upon which the rationality of this exemption rests. Where a patron and an employee are related by blood or marriage, there is no, or certainly very little, chance that the employee will induce the patron to drink a harmful or dangerous quantity of intoxicating liquor. The same is generally true with all of the remaining vices and pitfalls which follow from lack of restraint in alcoholic consumption including but not limited to sexual problems. We find no viable issue of equal protection raised by plaintiffs.

Having considered each of the grounds and reasons advanced by plaintiffs, we conclude that the ordinance before us is not violative of constitutional principles. It follows necessarily that plaintiffs are not entitled to injunctional relief. The order appealed from is accordingly affirmed.

Order affirmed.

BURKE, P. J., and EGAN, J., concur.