STEWART MARCOWITZ *et al.*, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF PUBLIC HEALTH *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 81-861

Opinion filed May 11, 1982.

Lapat, Saunders & Fields, Ltd., of Chicago, for appellants.

Tyrone C. Fahner, Attorney General, of Chicago (Edward M. Kay, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs appeal from the trial court's affirmance of an administrative order suspending their ambulatory surgical treatment center license for 30 days. The suspension was based on Dr. Stewart Marcowitz' refusal to permit officials from the Department of Public Health (the Department) to inspect plaintiffs' medical facility. Plaintiffs contend: (1) their medical facility, the Oak Lawn Surgical Center, does not fall within the purview of the Ambulatory Surgical Treatment Center Act (the ASTC) (Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.1 *et seq.*); (2) the inspections requested by the State officials were unreasonable invasions of privacy; and (3) the requested inspections amounted to unreasonable interference with the physician-patient relationship.

On June 17, 1980, the Department issued "Allegations of Noncompliance" against plaintiffs alleging that Department employees were denied the right to inspect plaintiffs' medical facility on April 24 and May 22, 1980. An administrative hearing was held on October 9, 1980. The following evidence was testified to by Department employees.

On April 24, 1980, two female Department employees, one a hospital nurse consultant and the other a social worker, traveled to plaintiffs' facility to conduct a survey (inspection). The two employees arrived at the Oak Lawn Surgical Center at 1 p.m. Dr. Marcowitz met them and refused their request to conduct a survey because he was seeing patients. He told them to come back at noon the following Monday. The Department employees informed him that they needed more than one date because the surveys were required to be unannounced. Dr. Marcowitz refused to give any additional dates.

On May 2, 1980, the Department received a letter of complaint from one of Dr. Marcowitz' former patients alleging that the abortion she received at the Oak Lawn Surgical Center was carelessly performed, nearly causing her death. The letter stated that the facilities at the Center

were dirty, as was the surgeon who performed the procedure. The same two Department employees who had been turned away on April 24 returned to the Center on May 22, 1980. They arrived at 12:20 p.m. and saw no patients in the waiting room. Dr. Marcowitz again refused to allow them to conduct the survey, telling them that he was having office hours at 1 p.m. He told them to return the following Monday. One of the two Department employees, both of whom conduct surveys as a regular part of their duties, testified that a survey includes examining the records and regulations of the surgical facility. She also stated that attempts to observe a surgical procedure and a patient counseling session are made only with the patient's permission.

Michael S. Grobsmith, the Department's Chief of Hospitals and Ambulatory Health Programs, wrote a letter to Dr. Marcowitz after the latter's refusal to permit the April 24 inspection. In the letter, Grobsmith informed Marcowitz that no notice of an impending inspection is required and that the inspectors would visit the Center again in the near future. Grobsmith testified that he defined a reasonable time for inspection as anytime during daylight business hours of the working days of the week. This would include the time that surgical procedures would be performed since inspection of the operating area during a procedure should be a part of a survey.

Dr. Marcowitz testified that he is the sole stockholder of Stewart Marcowitz Medical Service Corporation and has a license to operate an ambulatory surgical treatment center known as the Oak Lawn Surgical Center. On some days the Center is used for Dr. Marcowitz' general practice. The only surgical use of the facility, however, is the performance of abortion procedures. Dr. Marcowitz has observed all 4,000 of the abortions performed at the Center but does not himself conduct the procedure, which is done by an independent surgeon. Dr. Marcowitz agreed with the testimony of the Department employees concerning the events of April 24 and May 22, 1980. He further stated that he feels he should be present during a survey, which he said usually lasts 3 to 4 hours, and that he cannot accommodate an inspection when patients are at the Center. He believes there would be a danger in allowing a nurse from the Department to observe an abortion procedure.

On November 20, 1980, the hearing officer filed his findings and recommended decision. He found that plaintiffs failed to comply with the ASTC Act by refusing to allow inspections of the Oak Lawn Surgical Center. The officer also found that there was no showing that such inspections would have been unreasonable or oppressive or that other employees of the Center could not have accommodated the Department's inspections while Dr. Marcowitz was occupied. The hearing officer recommended that plaintiffs' license be suspended for 30 days. On Novem-

ber 24, 1980, the Director of the Department adopted the hearing officer's findings and recommended decision.

On December 10, 1980, plaintiffs filed a complaint for administrative review of the Department's decision and, on December 12, moved the circuit court to stay the suspension order pending administrative review. The court ordered the stay "on the condition that plaintiff allow reasonable inspections." On January 28, 1981, the Department inspectors arrrived at the Oak Lawn Surgical Center at approximately 9:30 a.m. Dr. Marcowitz told them he was busy and had surgery at 9:30 a.m. and that they could not inspect the facility until noon. The Department employees left and reported Dr. Marcowitz' refusal to allow the inspection to their supervisor.

The Department moved the trial court to vacate the stay order based on plaintiffs' refusal to allow the reasonable inspection as provided for in the stay order. A hearing on this matter was held on February 27, 1981, at which time Dr. Marcowitz testified that on January 28 it would have been impossible to allow the inspectors to examine his records because he (Marcowitz) would not be able to observe such an examination. He further testified he would have permitted an inspection of the facility room at noon on January 28, but he might not have permitted an examination of his records. One of the reasons he did not want to produce his records, according to Dr. Marcowitz, was that the Department would not "assume the responsibility for the information which they observed and for the privacy of that information."

The trial judge stated that he did not believe that an ambulatory surgical treatment center can put any restrictions on the statutory right of the State to inspect such facilities. He also noted that State employees are subject to stringent confidentiality provisions in the Act. On March 23, 1981, after submission of written arguments, the circuit court entered its final order. The court vacated the stay order which it had entered on December 12, 1980, and affirmed the Department's suspension of plaintiffs' ASTC license for 30 days. This appeal followed.

Plaintiffs' first contention on appeal is that the Center cannot be classified as an ambulatory surgical treatment center and, therefore, does not fall within the purview of the ASTC Act. (Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.1 *et seq.*) Their argument is founded on a recent Illinois Supreme Court decision holding that the ASTC Act could not constitutionally create one class of facilities that perform abortions and another class that does not. (*Village of Oak Lawn v. Marcowitz* (1981), 86 Ill. 2d 406, 427 N.E.2d 36.) The enactment the court reviewed was an Oak Lawn ordinance which adopted the definition of an ambulatory surgical treatment center from a section of the Illinois Act. That act states:

" 'Ambulatory surgical treatment center' means any institution,

place or building devoted primarily to the maintenance and operation of facilities for the performance of surgical procedures *or any facility in which a medical or surgical procedure is utilized to terminate a pregnancy, irrespective of whether the facility is devoted primarily to this purpose."* (Emphasis added.) Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.3(A).

Our supreme court held that the italicized portion of this statute was unconstitutional in that it discriminates against abortion procedures and thus contravenes equal protection and privacy considerations. (*Village of Oak Lawn v. Marcowitz* (1981), 86 Ill. 2d 406, 420.) The court went on to hold that the remainder of the statute is constitutionally permissible and is enforceable. (86 Ill. 2d 406, 421-22.) Plaintiffs argue that the primary activity at the Oak Lawn *Surgical* Center (emphasis added) is not the rendering of abortions—and therefore not surgical procedures since abortions are the only surgical procedures conducted at the Center—and that the Department failed to introduce any evidence to the contrary. Plaintiffs therefore assert that the Oak Lawn Surgical Center cannot be considered an ambulatory surgical treatment center and, therefore, the Department does not have jurisdiction to invoke the Act against them.

■■ Plaintiffs seem to overlook Dr. Marcowitz' own testimony that 4,000 abortions have been performed at the Oak Lawn Surgical Center. While this may not conclusively prove that the Center was "devoted *primarily* to the maintenance and operation of facilities for performance of surgical procedures," the number of surgical abortions performed at the Oak Lawn Surgical Center presents strong evidence that such is the case. More important, however, is the fundamental inconsistency in plaintiffs' position. If, as plaintiffs argue, they are not subject to the provisions of the ASTC Act, there would be no reason to appeal the Department's 30-day suspension of plaintiffs' ASTC license. If plaintiffs are not subject to the Act, there is no reason to have an ASTC license. We find that plaintiffs are subject to the provisions of the Act.

Plaintiffs' next contention is that the January 28, 1981, attempted inspection was an unreasonable invasion of privacy under the right to privacy provisions in the Illinois Constitution and the search and seizure provisions in the fourth amendment to the United States Constitution. At the outset we note that the attempted inspection on January 28 is not relevant to this appeal. It was the attempted inspections on April 24 and May 22 that provided the basis for the suspension order.

The fourth amendment protects against unreasonable searches. (*Katz v. United States* (1967), 389 U.S. 347, 353, 19 L. Ed. 2d 576, 583, 88 S. Ct. 507, 512.) The issue in the case at bar is whether the warrantless inspections sought by the Department on April 24 and May 22 were unreasonable. Reasonableness must be decided on the facts of each particular case.

(*People v. Kelly* (1979), 76 Ill. App. 3d 80, 84, 394 N.E.2d 739.) While the general rule is that warrants are required to conduct a search, exceptions exist. (*People v. Kelly* (1979), 76 Ill. App. 3d 80, 84.) Plaintiffs have cited a number of cases holding that the warrant requirement is applicable to businesses as well as personal residences. In *See v. City of Seattle* (1967), 387 U.S. 541, 545, 18 L. Ed. 2d 943, 947, 87 S. Ct. 1737, 1740, the Supreme Court held that an administrative entry, without consent, into portions of commercial premises which are not open to the public may only be compelled within the framework of a warrant procedure. In *Marshall v. Barlows, Inc.* (1978), 436 U.S. 307, 56 L. Ed. 2d 305, 98 S. Ct. 1816, the Supreme Court held that the exception to the search warrant requirement for "pervasively regulated" businesses and for "closely regulated" industries "long subject to close supervision and inspection" does not apply simply because a business is in interstate commerce. (436 U.S. 307, 313-14, 56 L. Ed. 2d 305, 311-12, 98 S. Ct. 1816, 1820-21, quoting *United States v. Biswell* (1972), 406 U.S. 311, 316, 32 L. Ed. 2d 87, 92, 92 S. Ct. 1593, 1596, and *Colonnade Catering Corp. v. United States* (1970), 397 U.S. 72, 74, 77, 25 L. Ed. 2d 60, 62, 64, 90 S. Ct. 774, 775, 777.) The industries which the court dealt with in *Biswell* and *Colonnade* were firearms and liquor. As was stated in *Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 271, 37 L. Ed. 2d 596, 601, 93 S. Ct. 2535, 2538, "The businessman in a regulated industry in effect consents to the restrictions placed upon him." In *Daley v. Berzanskis* (1971), 47 Ill. 2d 395, 269 N.E.2d 716, *cert. denied* (1971), 402 U.S. 999, 29 L. Ed. 2d 166, 91 S. Ct. 2173, the Illinois Supreme Court held that, because of the nature of the liquor business, the exercise of the State's police power via close scrutiny of the operation of the business through warrantless searches is not unreasonable or arbitrary. 47 Ill. 2d 395, 398.

Plaintiffs argue that the mere fact that an ambulatory surgical treatment center is regulated by the State is insufficient to bring the business within the exception to the search warrant requirement applied to firearms and liquor businesses. Plaintiffs fail to differentiate between simple regulation of an industry (as they would have this court believe is the case in the health care industry) and pervasive and long-standing regulation of an industry. The argument that the regulation of the health care industry in Illinois is somehow less important or less necessary than regulation of the firearms or liquor industries is untenable. That there has been pervasive, long-standing regulation of the health care industry in this State, and that such regulation is a necessary and proper function of the State's police power to protect the welfare of its citizens, is so obvious as to need no citation of authority.

■■ A review of the record gives us no reason to believe that a completed inspection of the Oak Lawn Surgical Center would have amounted to an

unreasonable search or invasion of privacy. By pursuing and receiving an ASTC license, plaintiffs accepted the rules and regulations which attached to the license, including the following:

"Every facility licensed under this Act and any premises proposed to be conducted as a facility by an applicant for a license shall be open at all reasonable times to an inspection authorized in writing by the Director. No notice need be given to any person prior to any inspection." (Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.9.)

This is not to say that plaintiffs are subject to the unfettered discretion of the Department. The Act is specific in requiring that all inspections be conducted at reasonable times. In the case at bar, the trial court properly found that the Department's attempted inspections of plaintiffs' facility were reasonable.

In *People v. Firstenberg* (1979), 92 Cal. App. 3d 570, 155 Cal. Rptr. 80, *cert. denied* (1980), 444 U.S. 1012, 62 L. Ed. 2d 641, 100 S. Ct. 660, the California Court of Appeals considered the propriety of a warrantless and unannounced inspection of a licensed nursing home. That court analyzed many United States Supreme Court cases, including, *See, Colonnade, Biswell* and *Marshall.* The California court noted the distinction between *See* and *Marshall,* both of which dealt with general regulatory schemes, *i.e.,* laws applicable to all businesses engaged in interstate commerce, and *Colonnade* and *Biswell,* both of which involved specific licensed industries. (92 Cal. App. 3d 570, 578-79, 155 Cal. Rptr. 80, 84.) The court concluded that the nursing home legislation fell into the latter category. (92 Cal. App. 3d 570, 579, 155 Cal. Rptr. 80, 85.) The court found that the nature of the industry and the potential abuses require frequent and unannounced inspections to protect the physical well-being of patients. The court held that the necessity for unannounced warrantless inspections in the long-term health care industry is just as great as in the firearms industry and, therefore, such inspections are reasonable within the meaning of the fourth amendment. (92 Cal. App. 3d 570, 580-81, 155 Cal. Rptr. 80, 86.) We agree with the reasoning of the *Firstenberg* decision and conclude that the attempted inspections of plaintiffs' surgical facility were reasonable and constitutionally permissible, based on plaintiff's statutory consent to such inspections and the State's police power to protect the well-being of its citizens.

■ Plaintiffs' final contention on appeal is that the inspections requested by the Department amounted to unreasonable interference with the physician-patient relationship. This contention is without merit. There is a requirement in the Act that each licensee under the Act maintain adequate medical records for each patient. (Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.6.) We believe that when there is a requirement that medical

records be kept, State inspectors have a right, during a statutorily authorized inspection, to see that the requirement is met. The confidentiality of the information in the records is protected by the restrictions against disclosure found in section 9 of the Act. Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.9.

Plaintiffs also assert that the patient's privacy is invaded by inspections while there are patients at the surgical center. Assuming, *arguendo*, that plaintiffs have standing to assert the invasion of another party's privacy, this position overlooks both the necessity of observing the treatment of patients (again, only with the approval of the patient) and the facts of this case. Although plaintiffs claim an inspection would have been proper during the noon hour, when no patients were scheduled, Dr. Marcowitz turned the inspectors away when they arrived at 12:20 p.m. on May 22, 1980.

The judgment of the trial court, affirming the 30-day suspension of plaintiffs' ambulatory surgical treatment center license is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.